# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00966-SCT

*STEVEN DEREK MORGAN AND RACHELLE MAJURE MORGAN*

*v.*

*JACKIE WEST*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/14/2000 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | MARCIE T. SOUTHERLAND |
| ATTORNEY FOR APPELLEE: | WILLIAM R. STRIEBECK |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 4/04/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/25/2002 |

### BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.

### PITTMAN, CHIEF JUSTICE, FOR THE COURT:

¶1. Steven Derek Morgan ("Derek") and Rachelle Majure Morgan ("Rachelle") are the natural parents of Zachary Derek Morgan ("Zack"), a minor child born April 21, 1997. On October 8, 1998, a final decree of divorce was entered into the Chancery Court of Washington County, whereby Derek and Rachelle were granted a divorce. In accordance with the final decree, Derek and Rachelle were given joint legal custody of Zack, with Rachelle being granted primary physical custody. Derek, in turn, was awarded reasonable visitation rights.

¶2. Jackie West ("West"), mother of Derek and grandmother of Zack, filed a Petition to Establish Grandparents' Visitation Rights pursuant to Miss. Code Ann. § 93-16-1, et. seq. On November 18, 1999. Derek and Rachelle did not file a response to the petition. After a hearing on May 2, 2000, in the Washington County Chancery Court, an order was entered May 9, 2000, establishing visitation for West, and ordering Derek and Rachelle to take Zack to West's home in Greenville every sixth weekend, as well as providing for summer visitation.

¶3. On May 15, 2000, Derek and Rachelle filed a Motion for Rehearing and Other Relief based on the following grounds:

1. The ruling and Order are not supported by substantial evidence.

2. The ruling constitutes a manifest error of law in that the grandparents visitation statute does not contemplate visitation in the circumstances presented to the court.

3. The chancellor abused her discretion by not allowing Derek and Rachelle an opportunity to fully present their case prior to the chancellor's ruling.

¶4. West's first weekend of visitation was scheduled for May 5, 2000, but this visit did not occur, resulting in a Motion for Contempt being filed against Derek by West. West's weekend visitation set for June 9, 2000, also did not take place.

¶5. On June 14, 2000, the trial court heard the Motion for Rehearing and Other Relief and the Motion for Contempt in which Derek, Rachelle and West each provided testimony. Derek testified that he did not comply with the chancellor's order for visitation for West because he believed that he and Rachelle had not been allowed to fully present their arguments before the chancellor ruled. The chancellor ruled that the prior order would stay intact and found Derek in contempt, sentencing him to two weekends in the Washington County Jail, one of which included Father's Day. In a separate order dated June 29, 2000, West was also awarded attorney's fees for the contempt matter and two additional weekends of visitation to make up for the ones that were missed due to Derek's contempt.

¶6. Feeling aggrieved by the chancellor's decision, Derek and Rachelle timely perfected this appeal.

## STANDARD OF REVIEW

¶7. This Court reviews a chancellor's findings of fact in the following manner:

This Court will always review a chancellor's findings of fact, but the Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.

*Cummings v. Benderman*, 681 So.2d 97, 100 (Miss. 1996).

¶8. In matters that are questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of the law. *Bank of Mississippi v. Hollingsworth*, 609 So.2d 422, 424 (Miss. 1992); *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990).

## STATEMENT OF THE ISSUES

**I. WAS THERE SUFFICIENT EVIDENCE FOR THE CHANCELLOR TO GRANT GRANDPARENT VISITATION?**

**II. WAS WEST UNREASONABLY DENIED VISITATION? WAS THE AMOUNT OF VISITATION AWARDED TO WEST IN THE CHANCELLOR'S ORDER EXCESSIVE?**

**III. WAS THE CHANCELLOR'S RULING CORRECT, SUPPORTED BY CREDIBLE EVIDENCE AND AN APPLICATION OF THE PROPER LEGAL STANDARD?**

¶9. This Court will consider the merits of these issues as follows:

**I. WAS THERE SUFFICIENT EVIDENCE FOR THE CHANCELLOR TO GRANT GRANDPARENT VISITATION?**

**II. DID THE CHANCELLOR SHOW A PREDISPOSITION TOWARD WEST?**

**III. DID THE CHANCELLOR ERR BY NOT AWARDING ATTORNEY'S FEES TO DEREK AND RACHELLE?**

## DISCUSSION

**I. WAS THERE SUFFICIENT EVIDENCE FOR THE CHANCELLOR TO GRANT GRANDPARENT VISITATION?**

¶10. This Court, in ***Martin v. Coop***, 693 So.2d 912 (Miss. 1997), outlined ten factors that are to be considered by a chancellor in making a determination regarding grandparent visitation:

In determining the amount of visitation that grandparents should be granted in this situation, some guidelines by this Court may be helpful. As always, the best interest of the child must be the polestar consideration. The visitation should be less than that which would be awarded to a non-custodial parent, unless the circumstances overwhelming dictate that that amount of visitation is in the best interest of the child, and it would be harmful to the child not to grant it. The following factors should be considered by the chancery court in determining grandparent visitation, and no one should be weighed more heavily than the others.

1. The amount of disruption that extensive visitation will have on the child's life. This includes disruption of school activities, summer activities, as well as any disruption that might take place between the natural parent and the child as a result of the child being away from home for extensive lengths of time.

2. The suitability of the grandparents' home with respect to the amount of supervision received by the child.

3. The age of the child.

4. The age, and physical and mental health of the grandparents.

5. The emotional ties between the grandparents and the grandchild.

6. The moral fitness of the grandparents.

7. The distance of the grandparents' home from the child's home.

8. Any undermining of the parent's general discipline of the child.

9. Employment of the grandparents and the responsibilities associated with that employment.

10. The willingness of the grandparents to accept that the rearing of the child is the responsibility of the parent, and that the parent's manner of child rearing is not to be interfered with by the grandparents.

As stated before, none of these factors should receive more weight in the chancellor's analysis than any other. These factors are further not all-inclusive. The chancellor should weigh all circumstances and factors he feels to be appropriate.

*Id*. at 916.

¶11. Derek and Rachelle contend that the chancellor did not properly consider the *Martin* factors as they believe that many of them were not addressed during the hearing. They point to *Gray v. Gray*, 745 So.2d 234, 248 (Miss. 1999), where this Court held that a chancellor's failure to follow enumerated guidelines is manifest error when specific findings of fact corresponding to such guidelines is required. Derek and Rachelle also assert that the information presented at the hearing was not sufficient for the chancellor to rule in favor of West and that such a ruling was against the overwhelming weight of the evidence.

¶12. West claims that the *Martin* factors were properly addressed at the trial court level and that the chancellor's decision was not against the overwhelming weight of the evidence. West advances that the chancellor after hearing testimony and observing the demeanor of the witnesses chose who to believe. West cites *Voda v. Voda*, 731 So.2d 1152, 1155 (Miss. 1999), where this Court stated that it is presumed on appeal that the chancellor has taken all factors into consideration. (citing *Tanner v. Tanner*, 481 So.2d 1063, 1064 (Miss. 1985)).

¶13. We conclude that the chancellor did not speak to the best interest of Zack and that several factors set forth in *Martin* were not adequately addressed. First and foremost, this Court has repeatedly held that in matters regarding child custody and visitation the best interest of the child is of paramount importance. *Martin* clearly sets forth this standard prior to outlining the factors to be considered in a grandparent visitation matter. *Martin* at 916. In awarding West visitation the chancellor stated the following:

> The Court finds that from prior testimony and testimony presented today that this grandmother was relied upon during the hard times, and at the present time the parents want to push her aside and treat her as an outsider. It is obvious to the Court they want to break the relationship between the grandchild and the grandmother. . .
>
> I think that the invitation to Mrs. West that was extended by testimony today by Mr. Morgan and Mrs. Morgan for Mrs. West to come to their homes for visitation is meaningless. It is evident to this Court that if in fact she did come to either of their homes, the visitation would be denied or it would be such a hostile environment that visitation could not be carried out.

There is no indication from the chancellor's statement, or anywhere else in the record, that the best interests of Zack were considered by the chancellor in making her decision. Instead, it appears that the chancellor was more concerned with the best interests of West. This alone is grounds for reversal.

¶14. Also, several of the *Martin* factors were not sufficiently addressed by the chancellor. As the chancellor did not articulate her findings regarding the *Martin* factors this Court is left with the task of reviewing the record to see what testimony is applicable to these factors. This Court finds that factors 1, 2, 6, 7, 8 and 10 were improperly considered or inadequately addressed by the chancellor. A brief analysis of each of these factors follows:

**1. The amount of disruption that extensive visitation will have on the child's life. This**

**includes disruption of school activities, summer activities, as well as any disruption that might take place between the natural parent and the child as a result of the child being away from home for extensive lengths of time.**

¶15. West was awarded visitation with Zack every sixth weekend, or nine visitations periods per year including the summer visitation period. There was testimony by both Derek and Rachelle expressing concerns over the amount of additional travel Zack would have to endure, along with what he already travels, in order to visit West. The chancellor, in her order establishing visitation rights, specified that it was West's responsibility to pick up Zack at whichever parents home he is at the time and to return Zack to the appropriate parent at the conclusion of visitation.

¶16. The chancellor improperly considered this factor. Zack's custodial parent, Rachelle, lives in Lawrence, in Newton County, Mississippi. Zack's father, Derek, lives in Vicksburg, Mississippi, while West lives in Greenville, Mississippi. By awarding West such generous visitation rights, the chancellor effectively sentenced Zack to a life spent on the road traveling to and from the homes of the parties to this case. Such travel is certain to cause substantial and unacceptable disruption in his life and the activities in which he participates. The disruption to the parents in arranging transportation for Zack and the chancellor's attempt to address that concern by requiring West to deliver Zack to whomever has visitation after her overlooks the wear such travel will have on Zack. We can therefore say that Zack's best interest were not considered by the chancellor when considering this factor.

### 2. The suitability of the grandparents' home with respect to the amount of supervision received by the child.

¶17. Testimony was presented by West and her husband that their home was suitable for visitation and that they had a neat and clean home. No other testimony regarding this factor was given at trial. This factor was not adequately addressed at trial. One area of concern raised by Rachelle was that she had not even met West's husband.

### 6. The moral fitness of the grandparents.

¶18. Little testimony was presented regarding the moral fitness of West. Derek and Rachelle attempted to question West about a child she had out of wedlock some thirty years prior to this trial, but West's motion in limine to prevent such questions being asked was sustained. No other testimony regarding this factor was presented.

¶19. This factor was also not adequately addressed at trial. The chancellor's comments regarding West's child out of wedlock were confusing as she excluded it by sustaining West's motion in limine but also stated that she was aware of it and inferred that it would be considered in her decision.

### 7. The distance of the grandparents' home from the child's home.

¶20. As stated above, Zack resides in Lawrence, Mississippi, located in Newton County with Rachelle and his maternal grandparents. Derek, who is remarried, lives with his wife and her children in Vicksburg. West lives in Greenville with her husband in Greenville, which is a three-hour drive from Lawrence.

¶21. This factor was improperly considered by the chancellor. The frequency of the visits, coupled with the distance between West's house and those of Derek and Rachelle, make this factor an important one. An

award of frequent visitation to West would result in a significant increase in travel for Zack who already has to regularly travel a considerable distance to visit Derek.

**8. Any undermining of the parent's general discipline of the child.**

¶22. West testified that she had never attempted to undermine Derek or Rachelle in the disciplining of Zack. Even when she did not agree with the way they handled a disciplinary matter that she would not make an issue of it in front of the child. Derek and Rachelle both testified that West often subverted their disciplining of Zack in both her actions and words.

¶23. This factor was improperly considered by the chancellor. There was ample testimony provided at trial that West had previously undermined Derek and Rachelle's discipline of Zack.

**10. The willingness of the grandparents to accept that the rearing of the child is the responsibility of the parent, and that the parent's manner of child rearing is not to be interfered with by the grandparents.**

¶24. As discussed above, West gave testimony that she had never attempted to undermine Derek or Rachelle in the disciplining of Zack and that if she disagreed with their mode of discipline that would not make an issue of it in front of the child. Rachelle countered with testimony that West "blatantly disregards any rules we set down for Zack." Derek testified that West goes behind his back every time he tries to discipline Zack and Rachelle provided similar testimony.

¶25. This factor was improperly considered by the chancellor. There was ample testimony provided at trial that West had previously interfered with the way Derek and Rachelle reared Zack.

## II. DID THE CHANCELLOR SHOW A PREDISPOSITION TOWARD WEST?

¶26. Derek and Rachelle make several assertions of error in their brief regarding the chancellor. Included among these are claims (A) that the chancellor applied an erroneous standard by reversing the burden of proof; (B) that the chancellor violated a code of judicial conduct by not allowing Derek and Rachelle the opportunity to be fully heard; and (C) that the chancellor erred by granting West superior visitation rights to those of the father. The Court will address each assertion separately.

### A. The chancellor applied an erroneous standard by reversing the burden of proof

¶27. A review of the ruling on June 14, 2000, clearly shows that the chancellor applied an erroneous legal standard. In her ruling she awards West visitation rights based on the fact that West was relied upon by Zack's parents "during hard times" and that West was deserving of being able to develop a relationship with her grandson Zack. As discussed previously in this opinion, in determining whether grandparent visitation should be granted the best interests of the child and the *Martin* factors should be the determining elements, not what is in the best interest of the grandparent.

### B. The chancellor violated a code of judicial conduct by not allowing Derek and Rachelle to be fully heard

¶28. Derek and Rachelle claim that the chancellor violated Canon 3 of the Code of Judicial Conduct when she limited Derek and Rachelle's testimony at trial and announced her decision that she was going to award

visitation to West.

¶29. West contends that the chancellor was within her power to limit the testimony; that Derek and Rachelle did not object to the limitation, but instead rested; and that if there was any error, it was cured by the second trial heard by the chancellor on June 14, 2000.

¶30. Canon 3(A)(4) of the Code of Judicial Conduct states:

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

A. Adjudicative Responsibilities.

* * * *

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

Miss. Code of Judicial Conduct, Canon 3(A)(4). Rule 611(a) of the Mississippi Rules of Evidence provides:

(a) Control by Court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Miss. R. Evid. 611(a). In support of her argument, West specifically refers this Court to the chancellor's power "to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" and the ability to "avoid needless consumption of time."

¶31. The main focus of West's argument is that Derek and Rachelle rested their case. A review of the record, however, reveals that at the initial hearing on the matter of West's visitation rights, the chancellor cut short the presentation of evidence because she needed to leave the courthouse at a quarter till 3 p.m. The chancellor also made several peremptory remarks during this hearing which indicate an unnecessary haste to resolve the conflict.

¶32. After West had completed her presentation of witnesses, she rested. Immediately thereafter the defense began to present its case with Derek testifying. Following a noon recess, direct examination of Derek was set to resume, when the chancellor told both attorneys of her need to leave "at a quarter till 3:00." The chancellor then stated the following:

. . . And I'm going to say this to all of the parties while we're in here, I think this case is absolutely ridiculous. It should be settled in the living room and not the courtroom. This is a grandmother. This is

a father. This is a mother. From what I get from the proof, she helped y'all when you were down. She helped take care of the child. I don't know what the animosity is about now, but it really needs to be gotten over with. Because I'm going to tell y'all what y'all are going to do, you're going to screw your kid up emotionally. You're going to be so worried about getting back at somebody, y'all are going to mess the kid up. Now I've gone over with - - with the attorneys on the phone several weeks ago. . .

The chancellor and attorneys for both parties then discussed a preliminary agreement that had been made regarding scheduling dates for grandparent visitation. Then, the chancellor commented:

> All right. We can proceed - - I mean, do y'all want to put on more proof. I mean, from what I've discussed with y'all in the hallway just then, I was - - I am under the impression that this is a workable solution to the problem we just have to go in and put it in the record as far as the weekends and what days that involved.

Counsel for Derek and Rachelle then stated that she did not want her clients to feel that "they've not had their day in court," whereupon cross-examination of Derek by West's counsel began. Rachelle then took the stand and commented on her concerns regarding possible grandparent visitation until the chancellor called for a recess whereupon West made a motion for a directed verdict. The chancellor did not rule on the motion, but instead stated, "[w]ell, I've already told y'all how I'm going to rule." We find such comments to indicate the chancellor was predisposed in favor of West and find her efforts to cut short the presentation of evidence to be improper.

¶33. No such remarks were made during the rehearing on the matter and Derek and Rachelle were allowed to testify to their satisfaction and without any time constraints. We agree with West that any error the chancellor may have committed in the first hearing concerning West's visitation rights was cured by the full rehearing on the matter in June 14, 2000.

### C. The chancellor erred by granting the grandmother superior visitation rights to those of the father

¶34. Derek and Rachelle also contend that the chancellor's scheduling of visitation for West conflicted with Derek's scheduled times, and that because West was successful in getting visitation rights, such an award made Derek's visitation rights inferior to West's. Derek and Rachelle rely on *Settle v. Galloway*, 682 So.2d 1032 (Miss. 1996), where this Court held that a grandparent does not have a right to visitation as comprehensive as that of a parent. *Id.* at 1035. The schedule plainly states that where it and Derek's visitation weekends conflict, the order granting West visitation rights shall prevail. The chancellor's decision to award visitation to West that conflicted with times that Derek was to have Zack resulted in West gaining visitation rights superior to that of the father, which is in direct violation of *Settle*. We conclude that the chancellor applied an erroneous legal standard when granting West visitation rights. Furthermore, the award of visitation rights to West improperly exceeded the visitation rights of Derek in contradiction of our established precedent.

### III. DID THE CHANCELLOR ERR BY NOT AWARDING ATTORNEY'S FEES TO DEREK AND RACHELLE?

¶35. Finally, Derek and Rachelle assert that they should have been awarded attorney's fees. At trial the chancellor denied awarding attorneys' costs involving everything but the contempt matter. Miss. Code Ann.

§ 93-16-3 (4) (1994) outlines how attorneys fees are to be handled in a request for grandparent visitation:

> (4) Any petition for visitation rights under subsection (2) of this section shall be filed in the county where an order of custody as to such child has previously been entered. If no such custody order has been entered, then the grandparents' petition shall be filed in the county where the child resides or may be found. **The court shall on motion of the parent or parents direct the grandparents to pay reasonable attorney's fees to the parent or parents in advance and prior to any hearing, except in cases in which the court finds that no financial hardship will be imposed upon the parents. The court may also direct the grandparents to pay reasonable attorney's fees to the parent or parents of the child and court costs regardless of the outcome of the petition.**

(emphasis added).

¶36. In the present case Derek and Rachelle never filed a motion requesting attorney's fees as is required by the statute. They did, however, present to the chancellor at trial information as to the amount of attorney's fees they had incurred whereupon the chancellor stated that she would allow Derek and Rachelle to ask for attorneys fees but she was unsure as to whether she would grant their request. Derek and Rachelle refer to M.R.C.P. 81 (d)(4) which provides that they are not required to file an answer for the type of proceeding that took place as outlined in M.R.C.P. 81(a)(3) for support for why no answer or motion requesting fees was ever made. They also contend that a finding of lack of financial hardship was required for West to not be required to pay for attorney's fees.

¶37. The statute does not specify whether the motion for attorney's fees need be written or oral, only that it be done "in advance and prior to any hearing." Miss. Code Ann. § 93-16-3 (4) (1994). Such advance notice did not occur in the present case as evidenced by the first mention of attorney's fees taking place at trial. Derek and Rachelle's failure to comply with the statute in making such a motion prior to the hearing proves fatal to their claim. This Court has commented on the award of attorney's fees in domestic cases:

> An award of attorney's fees in domestic cases is largely a matter entrusted to the sound discretion of the trial court. *Poole v. Poole*, 701 So.2d 813, 818 (Miss.1997); *Arthur v. Arthur*, 691 So.2d 997, 1004 (Miss.1997). Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal. *Bredemeier v. Jackson*, 689 So.2d at 778. Absent an abuse of discretion, the chancellor's decision in such matters will generally be upheld. *Armstrong v. Armstrong*, 618 So.2d 1278, 1282 (Miss.1993); *Martin v. Martin*, 566 So.2d 704, 707 (Miss.1990); *Kergosien v. Kergosien*, 471 So.2d 1206, 1212 (Miss.1985).

*Zeman v. Stanford*, 789 So.2d 798, 805 (Miss. 2001). The chancellor was within her discretion in denying Derek and Rachelle's untimely motion for attorney's fees. This issue is without merit.

## CONCLUSION

¶38. Based on the foregoing analysis, the judgment of the Washington County Chancery Court is affirmed to the extent that it denied an award of attorneys' fees to Steven Derek Morgan and Rachelle Majure Morgan. However, the judgment is reversed to the extent that it granted grandparents' visitation rights to Jackie West and this case is remanded to that court for further proceedings on that issue consistent with this opinion.

¶39. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**SMITH, P.J., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., AND EASLEY, J., CONCUR IN RESULT ONLY.**