839 So.2d 501 (2003)
T.T.W. a/k/a B.W.
v.
C.C. and J.C.
No. 2001-CA-01404-SCT.
Supreme Court of Mississippi.
March 6, 2003.
*503 Richard R. Vaughan, Gautier, attorney for appellant.
Damon Scott Gibson, Gulfport, attorney for appellees.
Before PITTMAN, C.J., WALLER and CARLSON, JJ.
WALLER, J., for the Court.
¶ 1. This case involves a minor girl who is the natural daughter of two unmarried young people. Because of the natural parents' drug (marijuana and cocaine) and alcohol use, the child went through withdrawal after her birth. The Department of Human Services placed the child in the custody of her maternal grandparents almost immediately after her discharge from the hospital. The natural parents relinquished their parental rights and consented to the maternal grandparents' adoption of the child.
¶ 2. The child's paternal grandmother, who is of Vietnamese descent, filed a petition for grandparents' visitation. After a hearing, the chancellor denied the petition. We vacate and remand this case to the chancellor because she failed to make findings of fact for each of the Martin[1] factors.

FACTS
¶ 3. It is obvious from the testimony at the hearing that the paternal grandmother loves the child. She specially made the child's favorite Vietnamese dessert and sent Vietnamese food home with the child. She was with the child constantly when she had visitation. She bought the child clothes and shoes and was teaching the child how to speak Vietnamese. She kept regular visitation with the child until the maternal grandparents/adoptive parents ("parents") refused to let the child go with the paternal grandmother.
¶ 4. The parents claimed, and the paternal grandmother admitted, that during visitations with the child, the paternal grandmother examined the child's genital area because she was suspicious that the child had been the victim of abuse. Furthermore, the man with whom the paternal grandmother lived had a son who had been diagnosed with sexual deviancy pertaining to child abuse. However, the parents requested the D.H.S. to conduct an investigation and the child underwent a physical examination, both of which turned up no evidence of sexual abuse.
¶ 5. The paternal grandmother also admitted that she had taken the child to the dockyard where the paternal grandmother's shrimp boat was moored and that she had taken her out of town, even though the parents did not wish for her to do so.

DISCUSSION
¶ 6. We will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused her discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Morgan v. West, 812 So.2d 987, 990 (Miss.2002); Cummings v. Benderman, 681 So.2d 97, 100 (Miss. 1996). For questions of law, we employ a de novo standard of review and will only reverse for an erroneous interpretation or application of the law. Morgan, 812 So.2d at 990; Bank of Miss. v. Hollingsworth, *504 609 So.2d 422, 424 (Miss.1992); Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990).
¶ 7. "Natural grandparents have no common-law `right' of visitation with their grandchildren. Such right, if any, must come from a legislative enactment." In re Adoption of a Minor, 558 So.2d 854, 856 (Miss.1990) (citing Olson v. Flinn, 484 So.2d 1015, 1017 (Miss.1986)). In 1983 the Mississippi Legislature enacted the grandparents' visitation rights statutes, Miss. Code Ann. §§ 93-16-1 to -7 (Rev.1994). Miss.Code Ann. § 93-16-3 states in pertinent part:
(2) Any grandparent who is not authorized to petition for visitation rights pursuant to subsection (1) of this section may petition the chancery court and seek visitation rights with his or her grandchild, and the court may grant visitation rights to the grandparent, provided the court finds:
(a) That the grandparent of the child had established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child; and
(b) That visitation rights of the grandparent with the child would be in the best interests of the child.
(3) For purposes of subsection (3) of this section, the term "viable relationship" means a relationship in which the grandparents or either of them have voluntarily and in good faith supported the child financially in whole or in part for a period of not less than six (6) months before filing any petition for visitation rights with the child or the grandparents have had frequent visitation including occasional overnight visitation with said child for a period of not less than one (1) year.
Section 93-16-7 states:
This chapter shall not apply to the granting of visitation rights to the natural grandparents of any child who has been adopted by order or decree of any court unless: (1) one (1) of the legal parents of such child is also a natural parent of such child; or (b) one (1) of the legal parents of such child was related to the child by blood or marriage prior to the adoption. This chapter shall apply to persons who become grandparents of a child by virtue of adoption.
¶ 8. The paternal grandmother and the parents are related to the child by blood prior to her adoption. Therefore, § 93-16-7 applies, and the paternal grandmother has standing to petition for visitation with the child under the grandparents' visitation statutes. Presiding Justice McRae, in his dissent, states that, under our law, the paternal grandmother is a "stranger" to the child and that her rights were terminated when the child was adopted. This is a misstatement of our law because § 93-16-7 clearly gives the paternal grandmother standing to seek visitation. The Legislature would not have given a natural grandparent standing to seek visitation if it considered natural grandparents to be "strangers" and intended for their visitation rights to be terminated.
¶ 9. Notwithstanding the paternal grandmother's standing to petition for visitation, a natural grandparent's statutory right to visit her grandchild is not as comprehensive as a parent's visitation rights. Settle v. Galloway, 682 So.2d 1032, 1035 (Miss.1996).
¶ 10. The best interests of the child must be the polestar consideration in awarding grandparent visitation. In *505 addition to this paramount concern, we have adopted ten factors that are to be considered by a chancellor in making a determination regarding grandparent visitation: (1) The amount of disruption that extensive visitation will have on the child's life. This includes disruption of school activities, summer activities, as well as any disruption that might take place between the natural parent and the child as a result of the child being away from home for extensive lengths of time; (2) The suitability of the grandparents' home with respect to the amount of supervision received by the child; (3) The age of the child; (4) The age, and physical and mental health of the grandparents; (5) The emotional ties between the grandparents and the grandchild; (6) The moral fitness of the grandparents; (7) The distance of the grandparents' home from the child's home; (8) Any undermining of the parent's general discipline of the child; (9) Employment of the grandparents and the responsibilities associated with that employment; (10) The willingness of the grandparents to accept that the rearing of the child is the responsibility of the parent, and that the parent's manner of child rearing is not to be interfered with by the grandparents. Martin v. Coop, 693 So.2d 912, 916 (Miss.1997). None of these factors should receive more weight in the chancellor's analysis than any other, and these factors are not all-inclusive. The chancellor should weigh all circumstances and factors she feels to be appropriate. Id.

WHETHER THE CHANCELLOR ABUSED HER DISCRETION AND/OR COMMITTED MANIFEST ERROR BY NOT SPECIFICALLY ADDRESSING THE MARTIN FACTORS.
¶ 11. The paternal grandmother contends that the chancellor did not properly consider the Martin factors. A chancellor's failure to follow enumerated guidelines is manifest error when specific findings of fact corresponding to such guidelines is required. Gray v. Gray, 745 So.2d 234, 238 (Miss.1999). However, it is presumed on appeal that the chancellor has taken all factors into consideration. Voda v. Voda, 731 So.2d 1152, 1155 (Miss. 1999) (citing Tanner v. Tanner, 481 So.2d 1063, 1064 (Miss.1985)).
¶ 12. We have recently reversed and remanded a case where the chancellor did not "articulate her findings regarding the Martin factors." Morgan v. West, 812 So.2d 987, 992 (Miss.2002). We held:
We conclude that the chancellor did not speak to the best interest of [the child] and that several factors set forth in Martin were not adequately addressed. First and foremost, this Court has repeatedly held that in matters regarding child custody and visitation the best interest of the child is of paramount importance. Martin clearly sets forth this standard prior to outlining the factors to be considered in a grandparent visitation matter....
Morgan, 812 So.2d at 992. Therefore, making findings of fact under the Martin factors is an integral part of a determination of what is in the best interests of a child.
¶ 13. The chancellor made no findings about the amount of disruption that extensive visitation will have on the child's life, the suitability of the grandparents' home with respect to the amount of supervision received by the child, the paternal grandmother's age and physical and mental health, the emotional ties between the paternal grandmother and the child, the paternal grandmother's moral fitness, the distance of the grandparents' home from the child's home, any undermining of the *506 parents' general discipline of the child, the responsibilities associated with the paternal grandmother's employment, and the paternal grandmother's willingness to accept that the rearing of the child is the responsibility of the parents, and that the parents' manner of child rearing is not to be interfered.
¶ 14. On remand, the chancellor might consider options other than a wholesale grant or denial of visitation. If the paternal grandmother were granted supervised visitation with the child, many of the problems (i.e., disobeying the parents' instructions as to where the paternal grandmother could take the child and telling the child that the paternal grandmother's son was her father) which had occurred in the past would be solved. Also, it might be in the child's best interests to be exposed to her Vietnamese heritage. In fact, it might be harmful for the child not to have some contact with her Vietnamese heritage, particularly since close ties were established between the paternal grandmother and the child.[2]
¶ 15. Presiding Justice McRae, in his dissent, states that the paternal grandmother had not had visitation with the child for three years. While this is true, Presiding Justice McRae fails to note that the paternal grandmother sought visitation during those three years, but the adoptive parents refused the same. Furthermore, in the two years that the paternal grandmother had visitation with the child, a viable and close relationship developed between the two. The three-year gap should not be held against the paternal grandmother.
¶ 16. Presiding Justice McRae voices legitimate concerns about the child's possible exposure to the paternal grandmother's sexually deviant stepson. However, there exists no proof of any abuse, attempted or otherwise, while the grandmother exercised visitation, and a limited and supervised visitation would obviate this concern.

CONCLUSION
¶ 17. We vacate and remand for specific findings of fact pertaining to the Martin factors, and direct the chancellor to specifically review whether supervised visitation would be in the best interest of the child.
¶ 18. VACATED AND REMANDED.
PITTMAN, C.J., SMITH, P.J., COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.
McRAE, P.J., Dissenting:
¶ 19. I dissent to the majority's determination that this cause should be sent back for further explanation by the chancellor using the factors established in Martin v. Coop, 693 So.2d 912 (Miss.1997). There is no explanation needed. The facts clearly show that the ex-paternal grandmother is a stranger to this child under our law.
¶ 20. The record shows that the child was adopted by her maternal grandparents *507 ("parents") and has lived with them since birth. Her paternal grandmother, who now seeks visitation, had voluntary contact with her up until she was two (2) years old. The child is now five (5) years old and has not had visitation with her paternal grandmother in three (3) years.
¶ 21. At the time when visitations were permitted, the paternal grandmother's "live in boyfriend" had a son who had been diagnosed with sexual deviance. Testimony and evidence also tended to show that there was some concern that the child may have been sexually abused. The chancellor in her rulings stated that she was "concerned by the fact that [the paternal grandmother had] allowed [the child] to have contact with a known sex offender." When the allegations of abuse arose, the paternal grandmother contacted DHS and accused the parents of sexual abuse. Upon investigation, the parents were cleared of any wrong doing.
¶ 22. When the father relinquished his parental rights, he became a stranger to this child by law. So too has the paternal grandmother. The child has not seen or been in contact with her paternal grandmother in three years. They have no relationship on which to justify the granting of visitation. Miss.Code Ann. § 93-16-3 (Rev.1994) provides in pertinent part that:
(2) Any grandparent who is not authorized to petition for visitation rights pursuant to subsection (1) of this section may petition the chancery court and seek visitation rights with his or her grandchild, and the court may grant visitation rights to the grandparent, provided the court finds:
(a) That the grandparent of the child had established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with child; and
(b) That visitation rights of the grandparent with the child would be in the best interest of the child.
(3) For the purpose of subsection (2) of this section, the term "viable relationship" means a relationship in which the grandparents or either of them have voluntarily and in good faith supported the child financially in whole or in part for a period of not less than six (6) months before filing any petition for visitation rights with the child or the grandparents have had frequent visitation including occasional overnight visitation with said child for a period of not less than one (1) year.
(emphasis added). The majority undermines this code section by stating that "[t]he Legislature would not have given a natural grandparent standing to seek visitation if it considered natural grandparents to be `strangers' and intended for their visitation rights to be terminated." It is the majority that misapprehends by its analysis. Just because the grandparents may have standing to seek visitation does not mean that under these circumstances the factors for granting visitation are satisfied or that it is in the best interest of the child to grant the grandmother visitation. The facts show that the grandmother has not supported the child financially and has not seen the child frequently within the last three years. There is no viable relationship between the grandmother and the child upon which to base the need for visitation. The burden was upon the grandmother to produce such evidence. Since there was no evidence presented that would support a finding for visitation under Miss.Code Ann. § 93-16-3, the chancellor was justified in denying visitation.
¶ 23. Additionally, it would not be in the child's best interest to grant visitation to the grandmother. The facts clearly *508 show that allowing visitation by the grandmother could be detrimental to the child's health and well being. The grandmother continuously disregarded the legal parent's visitation restrictions. She took the child to the shipyards despite repeated demands by the legal parents that she not take her there. She maintained a known sex offender in her home and even let the child be alone with him. Even after allegations of sexual abuse arose, she still continued to allow the sex offender to remain in her home. Visitation by the paternal grandmother would not be in the best interest of the child.
¶ 24. For these reasons, I respectfully dissent.
NOTES
[1] Martin v. Coop, 693 So.2d 912, 916 (Miss. 1997).
[2] The paternal grandmother also claims that the chancellor abused her discretion and/or committed manifest error by failing to apply a standard of reasonableness before finding that the parents were reasonable in denying the paternal grandmother visitation with the child. We find that it is unnecessary to reach this issue because the case should be vacated and remanded for further findings. However, the question of whether a person has acted reasonably is generally a question of fact, not law. See, e.g., Ford Motor Credit Co. v. Mathis, 660 So.2d 1273, 1276 (Miss. 1995).