LEE, P.J.,
for the Court.
¶ 1. This appeal arises from a suit filed by Eva Hillman in an effort to secure custody of her grandchildren, or in the alternative, to receive scheduled grandparent visitation. Finding that the chancellor did not err in denying Hillman’s requests for custody and for visitation, this Court affirms the decision of the chancellor.
FACTS AND PROCEDURAL HISTORY
¶ 2. Brenda and Ricky Vance have two children, Kayla and Jerrid, aged four and three, respectively. Brenda and Ricky divide their domestic responsibilities. Ricky works during the day while Brenda tends to the children, and at night, Brenda works as an exotic dancer in Jackson while Ricky cares for the children. Brenda’s relationship with her mother, Eva, has deteriorated over the past few months; however, Brenda maintains that Eva is welcome to visit the children if Eva does not bring her boyfriend, Clayton Parker, with her when she comes to visit. The Vance family, like many families, has a pet dog which lives in the Vance home. Eva argues that the dog is a vicious animal, however the Vances assert that the dog is old, loving, and losing his teeth.
*45 ¶ 3. On December 9, 2002, Eva petitioned the chancery court to terminate Brenda and Ricky’s parental rights and award her custody of the children, or in the alternative to grant her grandparent visitation rights under Mississippi Code Annotated Section 93-16-3 (Rev.2004). A trial on the matter was held on August 5, 2003. The trial court entered a judgment on September 2 denying Eva’s petition for custody and her petition for visitation. It is from this denial that Eva now appeals, urging three assignments of error that can be summarized as follows: (1) the trial court erred in not terminating the Vances’s parental rights and (2) the trial court erred in not granting Eva visitation.
STANDARD OF REVIEW
¶ 4. In reviewing a chancellor’s decision regarding the termination of parental rights, this Court views the chancellor’s findings of fact under the manifest error/substantial credible evidence test. M.L.B. v. S.L.J., 806 So.2d 1023, 1026(¶8) (Miss.Ct.App.2000). When reviewing a chancellor’s visitation determination this Court will not disturb the factual findings of the chancellor unless the factual findings are manifestly wrong or clearly erroneous. Martin v. Coop, 693 So.2d 912, 914 (Miss.1997).
DISCUSSION OF THE ISSUES
I. DID THE CHANCELLOR ERR IN NOT TERMINATING THE VANCES’S PARENTAL RIGHTS AND NOT GRANTING EVA CUSTODY?
¶ 5. Eva argues that Brenda and Ricky should lose their parental rights because Brenda is a stripper; Brenda has sold, and might continue to sell, pornographic materials; the family dog poses a threat to the- children; and a number of other miscellaneous complaints and allegations disparaging the Vances’s moral fiber.
¶ 6. On appeal, Eva cites Riley v. Doerner, 677 So.2d 740, 744 (Miss.1996), in support of her argument that a chancellor may remove a child from an unwholesome environment and place the child in a healthier environment. While this is true, Riley does not apply to the case sub judi-ce. Riley addressed a custody modification battle between two divorced parents. Riley does not address terminating a parent’s right to rear her child. Furthermore, in Riley, the home of the custodial parent was the site of illegal drug use. There was no determination of illegal activity in the case sub judice.
¶ 7. To sever the rights of a natural parent, the burden is upon the petitioner to show by clear and convincing evidence that the objecting parent has either abandoned or deserted the child or is mentally or morally or otherwise unfit to rear or train the child. Petit v. Holifield, 443 So.2d 874, 877 (Miss.1984) (internal citations omitted). Once that has been established, the best interest of the child is to be considered. Id.
¶ 8. Mississippi Code Annotated Section 93-15-103 outlines the grounds which may be considered in terminating parental rights as follows:
(3) Grounds for termination of parental rights shall be based on one or more of the following factors:
(a) A parent has deserted without means of identification or abandoned a child as defined in Section 97-5-1, or
(b) A parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; or
*46 (c) A parent has been responsible for a series of abusive incidents concerning one or more children; or
(d) When the child has been in the care and custody of a licensed child caring agency or the Department of Human Services for at least one (1) year, that agency or the department has made diligent efforts to develop and implement a plan for return of the child to its parents, and:
(i) The parent has failed to exercise reasonable available visitation with the child; or
(ii) The parent, having agreed to a plan to effect placement of the child with the parent, fails to implement the plan so that the child caring agency is unable to return the child to said parent; or
(e) The parent exhibits ongoing behavior which would make it impossible to return the child to the parent’s care and custody:
(i) Because the parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction, severe mental deficiencies or mental illness, or extreme physical incapacitation, which condition makes the parent unable to assume minimally, acceptable care of the child; or
(ii) Because the parent fails to eliminate behavior, identified by the child caring agency or the court, which prevents placement of said child with the parent in spite of diligent efforts of the child caring agency to assist the parent; or
(f) When there is an extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which was caused at least in part by the parent’s serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment; or
(g) When a parent has been convicted of any of the following offenses against any child: (i) rape of a child under the provisions of Section 97-3-65, (ii) sexual battery of a child under the provisions of Section 97-3-95(c), (iii) touching a child for lustful purposes under the provisions of Section 97-5-23, (iv) exploitation of a child under the provisions of Section 97-5-31, (v) felonious abuse or battery of a child under the provisions of Section 97-5-39(2), (vi) carnal knowledge of a step or adopted child or a child of a cohabi-tating partner under the provisions of Section 97-5-41, or (vii) murder of another child of such parent, voluntary manslaughter of another child of such parent, aided or abetted, attempted, conspired or solicited to commit such murder or voluntary manslaughter, or a felony assault that results in the serious bodily injury to the surviving child or another child of such parent; or
(h) The child has been adjudicated to have been abused or neglected and custody has been transferred from the child’s parent(s) for placement pursuant to Section 43-15-13, and a court of competent jurisdiction has determined that reunification shall not be in the child’s best interest.
Miss.Code Ann. § 93-15-103 (Rev.2004).
¶ 9. The chancellor correctly found that none of these factors apply. Without commenting on the morality of Brenda’s occupation, this Court is not inclined to terminate a parent’s rights merely because the parent happens to work as a stripper. Eva, Brenda, Ricky and Mr. Parker all testified that the children were well-cared for, clean, dressed appropriately, well-fed, and well-adjusted. Nothing in the record supports a contention that these children were abused or neglected, and nothing in *47 the record supports Eva’s contention that Brenda and Ricky pose a threat to their children. Finally, the chancellor determined that the “vicious” animal was a beloved, aged, family pet that posed no threat to the children. The learned chancellor correctly denied Eva’s petition for custody of the minor children.
II. DID THE CHANCELLOR ERR IN NOT GRANTING EVA GRANDPARENT VISITATION?
¶ 10. Natural grandparents have no common-law “right” to visitation with their grandchildren. Such right, if any, must come from a legislative enactment. Givens v. Nicholson, 878 So.2d 1073, 1076-77(¶ 16) (Miss.Ct.App.2004) (citing In re Adoption of a Minor, 558 So.2d 854, 856 (Miss.1990)). In the early 1980’s, the Mississippi Legislature enacted the grandparents’ visitation rights statutes, found at Mississippi Code Annotated Section 93-16-1 to 7 (Rev.2004). These statutes delineate how a grandparent may seek the opportunity to secure legal visitation with a grandchild. The best interests of the child are the paramount consideration when determining visitation. Morgan v. West, 812 So.2d 987, 992(¶ 13) (Miss.2002).
¶ 11. Under the statute, if both of the parents are living and have custody of the child, a grandparent may be awarded visitation with the child if the court finds:
[t]hat the grandparent of the child had established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child; and (b) That visitation rights of the grandparent with the child would be in the best interests of the child.
Miss.Code Ann. Sec. ■ 93-16-3 (Rev.2004). The statute also defines “viable relationship” as follows:
a relationship in which the grandparents or either of them have voluntarily and in good faith supported the child financially in whole or in part for a period of not less than six (6) months before filing any petition for visitation rights with the child or the grandparents have had frequent visitation including occasional overnight visitation with said child for a period of not less than one (1) year.
Id. Although Eva presented testimony that she cared for the children for three months, that falls short of the six month requirement outlined in the statute. However, the chancellor properly found that Eva had frequent visitation, including overnight visitation, with the children. The chancellor also determined that Brenda and Ricky had not unreasonably withheld visitation from Eva, considering the Yances’s concerns about Eva’s boyfriend and the tension between the adult family members. The chancellor’s analysis could have terminated at this point, for under the statute the grandparent seeking visitation must show that the parent has unreasonably denied the grandparent visitation. However, out of an abundance of caution, the learned chancellor evaluated whether court-ordered visitation was in the children’s best interests. The chancellor considered the ten factors enunciated by our supreme court in Martin, 693 So.2d at 914, and determined that it was not within the children’s best interests to order such visitation.
¶ 12. We see no error here. The chancellor’s findings of fact are supported by the testimony presented in the record. The chancellor considered the testimony presented to the court and the chancellor thoroughly applied the correct law to the facts. As such, this Court affirms the order of the chancery court.
*48 ¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.