FACTS AND PROCEDURAL HISTORY ¶ 1. On January 14, 1997, a daughter was born to Ruth Potter and Rodtrellus Greene. In June 2002, Greene filed a petition in the Rankin County Chancery Court for visitation and other relief. Greene, who had been living near Atlanta, Georgia, since his daughter's birth, was awarded reasonable visitation with his daughter. The chancellor also ordered Greene to pay $300 per month in child support, as well as one-half of the child's medical expenses. Although Greene had always acknowledged that he was the natural father, the chancellor established paternity and ordered the child's birth certificate to be changed to reflect Greene as her natural father. In May 2003, Potter was found in contempt for failing to allow Greene to exercise his visitation rights and she was ordered to pay Greene's reasonable attorney's fees.
 ¶ 2. According to the record, in June 2003 the child was interviewed by a clinical therapist at the Mississippi Children's Advocacy Center after Potter accused Greene of abusing their daughter. In May 2004, the Rankin County Youth Court entered an order requiring Greene and Potter to schedule a psychological assessment of the child with Dr. Criss Lott. The youth court also ordered both Greene and Potter to submit to a psychological assessment by Dr. Lott. The child was appointed a guardian ad litem.
 ¶ 3. On June 22, 2004, the youth court conducted a review hearing. The youth court found that Potter had neither met with Dr. Lott for her assessment nor presented the child for her assessment. At the time of the hearing, Greene had met with Dr. Lott. The youth court, pursuant to the guardian ad litem's recommendation, suspended visitation with both parents and placed the child in the custody of the Department of Human Services. Shortly thereafter, Dr. Lott submitted his recommendation to the "court, finding that the allegations of abuse were unfounded. Dr. Lott suspected that Potter had been coaching the child and telling the child that Greene was not her biological father. Dr. Lott recommended that the child continue her previously scheduled visitation with Greene. On July 2, 2004, the youth court judge ordered the custody of the child to remain with DHS, but he allowed the child visitation with her father for the next month.
 ¶ 4. Primary physical custody of the child was eventually returned to Potter. Over the next two years various motions were filed by both parties, including motions by Greene alleging contempt and seeking a modification of child support. Another guardian ad litem, Carol West, was appointed by the chancellor. West submitted her report to the chancellor out-lining her findings. West recommended that physical custody should remain with Potter, but Greene's visitation should be expanded to counteract Potter's "record of hostility toward [Greene] and her history of interfering with his court ordered visitation."
 ¶ 5. After a hearing on various motions, the chancellor awarded primary physical *Page 293 
custody of the child to Greene. The chancellor also disposed of the various contempt motions, none of which are at issue in this appeal. Potter now appeals asserting (1) that the chancellor erred in finding that she had made unsubstantiated allegations against Greene concerning sexual abuse of the child and (2) that there were insufficient material changes in circumstances to warrant a change in custody.
 STANDARD OF REVIEW ¶ 6. The standard of review in child custody cases is quite limited, and in order to reverse the chancellor's findings, the chancellor must be manifestly wrong, clearly erroneous, or have applied an erroneous legal standard. Hensarling v.Hensarling, 824 So.2d 583, 587 (¶ 7) (Miss. 2002). This Court reviews de novo whether the chancellor applied the proper legal standard in deciding a custody modification case.Morgan v. West, 812 So.2d 987, 990 (¶ 8) (Miss. 2002).
 DISCUSSION I. DID THE CHANCELLOR ERR IN FINDING THAT THE ALLEGATIONS OF SEXUAL ABUSE WERE UNSUBSTANTIATED?
 ¶ 7. In her first issue on appeal, Potter argues that the chancellor erred in finding that the allegations of sexual abuse made against Greene were unsubstantiated. This Court will not disturb a chancellor's findings of fact unless these findings are manifestly wrong or clearly erroneous. Sanderson v.Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss. 2002). Both Dr. Lott and West determined that the abuse allegations were concocted by Potter and were unsupported by the evidence. From the record before us, we cannot find that the chancellor erred in determining that the allegations of sexual abuse were unsubstantiated.
 II. WAS THERE A MATERIAL CHANGE OF CIRCUMSTANCES TO WARRANT MODIFICATION OF CHILD CUSTODY?
 ¶ 8. In her other issue raised on appeal, Potter argues that the chancellor erred in modifying the custody of her daughter. Potter's sole argument is that this Court should reverse the chancellor's decision because the report of the guardian ad litem, West, recommended that the child continue to live with Potter. The proper legal standard for child custody modification is as follows: (1) whether there has been a material change in circumstances which adversely affects the welfare of the child and (2) whether the best interest of the child requires a change of custody. Weigand v.Houghton, 730 So.2d 581, 585 (¶ 15) (Miss. 1999). In finding that there had been a material change in circumstances, the chancellor stated as follows:
 The Court finds in this case that Ruth Potter's continued and obstinate interference with Rodtrellus Greene's visitation with [the daughter] which included allegations of abuse that have been totally unsubstantiated over time and which have necessitated the involvement of the Rankin County Youth Court, investigations by the Department of Human Services, and an evaluation by a clinical psychologist, coupled with repeated and deliberate coaching of the child by the mother which has led to a parental allegation of Mr. Greene by his daughter, have adversely affected the emotional well being of the subject minor child in this case; that such actions in their totality equate with a material change of circumstances adverse to the minor child and continuing over a long and extended period of time while [the daughter] has been in [the] custody of her mother. *Page 294 
 ¶ 9. The chancellor then reviewed the Albright
factors on the record to deter-mine whether it was in the best interest of the child to require a change in custody. SeeAlbright v. Albright, 437 So.2d 1003 (Miss. 1983). The chancellor determined that the best interest of the child necessitated a change in custody from Potter to Greene.
 ¶ 10. We are not persuaded by Potter's general assertion that this Court should reverse the chancellor's judgment because West recommended custody remain with Potter. The supreme court has stated that "[w]hile a chancellor is in no way bound by a guardian's recommendations, a summary of these recommendations in addition to his reasons for not adopting the recommendations is required in the chancellor's findings of fact and conclusions of law." Floyd v. Floyd, 949 So.2d 26, 29 (¶ 8) (Miss. 2007) (citing S.N.C. v. J.R.D., 755 So.2d 1077,1082 (¶ 18) (Miss. 2000)). In this case, the chancellor noted that, while he greatly respected Ms. West's judgment and recommendation, he determined that it was in the best interest of the child that she be placed in Greene's custody. We can find no error in the chancellor's decision; thus, this issue is without merit.
 ¶ 11. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURTIS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.