GRIFFIS, P.J.,
for the Court:
¶ 1. Lori Lynn Walley and Christopher Blake Walley appeal the chancellor’s award of grandparent-visitation rights to Lori’s parents, Kathy Lynn Pierce and Tony Curtis Pierce. The Walleys claim that the chancellor: (1) committed manifest error by finding that they had unreasonably denied visitation to the Pierces, (2) failed to accord special weight to their wishes as to the amount and type of visitation awarded, and (3) applied the Mississippi grandparent-visitation statute in a way that violates their due-process rights. Finding no error, we affirm.
FACTS
¶ 2. The Walleys have three children— ages six, four, and nine months at the time of trial. The Pierces are the children’s maternal grandparents. The Walleys had been married for approximately eight years at the time of trial. From the time they were married until about a year before trial, the Walleys lived in a mobile home located on the Pierces’ property. Due to their close proximity, the Pierces shared a close relationship with the children and saw them on an almost daily basis.
¶ 3. In 2008, there was a physical altercation between Lori and Blake’s mother and sister. Lori was injured in the fight, and she later told her parents what had happened. Lori’s mother, Kathy, became upset with Blake’s mother and sister. Eventually, Lori was able to mend her relationship with Blake’s family, but the relationship between Kathy and Blake’s mother and sister did not improve.
¶ 4. In October 2008, the Walleys moved from the Pierces’ property and into a rental home because of tension within the family. After the move, the Walleys only allowed the Pierces to have visitation with the children at their home or while in their presence. On February 11, 2009, the Pierces filed a petition for grandparent-visitation rights in the Chancery Court of Greene County. The Pierces alleged that the Walleys had unreasonably denied them visitation with their grandchildren.
¶ 5. An agreed temporary order was entered that allowed the Pierces supervised visitation. At trial, the Walleys testified that they did not want the Pierces to have unsupervised visitation with the children because of the animosity between the Pierces and Blake’s family. They also feared that the children would be exposed to the dangers of the Pierces’ unfenced swimming pool.
¶ 6. The Pierces testified that, even though the Walleys said they were welcome to visit the children, they did not feel comfortable in the Walleys’ home. The Pierces believed that unsupervised visitation was required for them to maintain their close relationship with the children.
¶ 7. The chancellor agreed and awarded unsupervised visitation to the Pierces. The visitation included the first weekend of each month — from Friday night to Saturday night, one week during the summer, two days between Christmas and New *920 Year’s Day, and the Monday following Easter. The Walleys now appeal.
STANDARD OF REVIEW
¶ 8. This Court employs a limited standard of review in reviewing a chancellor’s decision. Stacy v. Ross, 798 So.2d 1275, 1278 (¶ 13) (Miss.2001). “A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous.” Sanderson v. Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss.2002) (quoting Consol. Pipe & Supply Co. v. Colter, 735 So.2d 958, 961 (¶ 13) (Miss.1999)). “However, the Court will not hesitate to reverse if it finds the chancellor’s decision is manifestly wrong, or that the court applied an erroneous legal standard.” Owen v. Owen, 928 So.2d 156, 160 (¶ 11) (Miss.2006). “Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record.” Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss.2000). Questions of law are reviewed de novo. Chesney v. Chesney, 910 So.2d 1057, 1060 (¶5) (Miss.2005) (citing Southerland v. Southerland, 875 So.2d 204, 206 (¶ 5) (Miss.2004)).
ANALYSIS

1. Whether the chancellor committed manifest error by finding that the Walleys had unreasonably denied visitation to the Pierces.

¶ 9. The grandparent-visitation rights requested in this case is governed by Mississippi Code Annotated section 93-16-3(2) (Supp.2010). To award visitation to the Pierces, the chancellor was required to find that: (1) the Pierces had established a viable relationship with the children, and the Walleys had unreasonably denied the Pierces’ visitation rights with the children; and (2) the visitation rights of the Pierces would be in the best interests of the children. Id.[1]
¶ 10. The Walleys argue that the chancellor showed little regard for their wishes, despite finding that they were fit parents. They rely on Stacy v. Ross, 798 So.2d at 1275. There, the Mississippi Supreme Court found that the chancellor erred in awarding unsupervised visitation rights to grandparents over the objection of fit parents. Id. The Walleys contend that the chancellor here, as in Stacy, did not consider their wishes in reaching his decision to award unsupervised visitation to the Pierces.
¶ 11. The record, however, reflects that the chancellor gave due consideration to the Walleys’ wishes. The chancellor weighed the concerns of the Walleys, and he found that their main reason for denying visitation was their spite resulting from tensions between Blake’s family and the Pierces. The chancellor noted that: it was agreed by all parties that the Pierces and the minor children loved one another; the Walleys complained of no failings on the part of the Pierces in regard to the children; and the Walleys’ concerns resulted from the presence of an unfenced swimming pool on the Pierces’ property and Kathy’s propensity to make derogatory comments that might be harmful to the children.
¶ 12. Ultimately, the chancellor found that limited and supervised visitation would not be in the best interests of the children because mandating close proximity between parties that have had alterca *921 tions outside of the presence of the children would increase the likelihood of such an altercation while in the presence of the children. Further, the chancellor noted that there were no grounds for permitting parents to deny visitation to grandparents out of spite, which would be incompatible with the purpose of section 93-16-3.
¶ 13. The Walleys also argue that where there are tensions between parents and grandparents, the parents of minor children are not unreasonable in limiting visitation, citing Hillman v. Vance, 910 So.2d 43, 47 (¶ 11) (Miss.Ct.App.2005). Vance can be distinguished because, in Vance, this Court found that the grandmother did not meet her burden of showing a viable relationship as defined by section 93-16-3(3) because she had only cared for the children for three months. Id. It is clear that no such issue exists here, as the Walleys stipulated that the Pierces had a viable relationship with the children. Further, in Vance, this Court found that the Vances’ refusal of visitation was reasonable based not only on tensions between the Vances and the grandparents, but also on the legitimate concerns of the Vances with regard to the grandmother’s boyfriend and the best interests of the children. Id.
¶ 14. Here, the record reflects no issue that represents a danger to the children similar to that of a potentially harmful third party, and the chancellor found that the best interests of the children were served by unsupervised visitation with the Pierces. The chancellor also found that supervised visitation in which the Walleys constantly followed the Pierces at all times sent an undesirable message to the children with regard to grandparents they hold in high esteem.
¶ 15. The chancellor applied the factors set forth in Martin v. Coop, 693 So.2d 912, 916 (Miss.1997) to evaluate the impact on the children. In doing so, the chancellor found that: (1) extensive visitation would have no negative impact on the children with the exceptions of Sundays because the Walleys were very involved in their church; (2) the Pierces’ home was suitable for the presence of the children and that adequate supervision was provided while the children were present; (3) the older two children are able to communicate effectively with family members and are familiar with the Pierces’ home; (4) there is a loving and strong relationship between the Pierces and the children; (5) the Pierces are morally fit; (6) travel associated with visitation would be minimal; (7) there was no indication of attempts by the Pierces to undermine the general discipline of the children by the Walleys; (8) the Pierces’ employment would not impede visitation; and (9) Kathy had, at times, exhibited tendencies to interfere with the child-rearing methods employed by the Walleys. After reaching these factual conclusions, the chancellor found that the Pierces were entitled to unsupervised visitation.
¶ 16. We find no manifest error in the chancellor’s finding that the Walleys had unreasonably denied visitation to the Pierces and that such visitation was in the best interests of the children. Accordingly, this issue has no merit.
2. Whether the chancellor committed manifest error by failing to accord special weight to the Walleys’ determination of how much visitation the Pierces should have with the children.
¶ 17. The Walleys argue that the United States Supreme Court has recognized a “presumption that fit parents act in the best interests of their children.” Troxel v. Granville, 530 U.S. 57, 63, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). They also point out that “[p]arents with custody have a paramount right to control the environment, physical, social, and emotional, to *922 which their children are exposed.” Stacy, 798 So.2d at 1280 (IT 23). They further argue that “[¿Interference with that right based upon anything less than compelling circumstances is not the intent of the visitation statute.” Id. As noted above, there has been no allegation that the Walleys are unfit parents.
¶ 18. In Troxel, the United States Supreme Court addressed a statute that permitted any person, regardless of relation to the minor child, to be granted visitation at any time, weighing only the best interests of the child as a deciding factor. Troxel, 580 U.S. at 71, 120 S.Ct. 2054. The Supreme Court struck down the law because it was too broad, allowing any person to claim visitation rights regardless of the parents’ wishes. Id. at 73, 120 S.Ct. 2054.
¶ 19. As noted above, the record reflects that the chancellor gave significant consideration and deference to the Wal-leys’ wishes, and he noted their concerns. Their allegation that the chancellor totally disregarded their preferences is not supported by the record. The chancellor clearly considered their arguments that visitation should be limited and supervised, and he found those arguments wanting. This issue is without merit.

3. Whether the chancellor’s application of the grandparent-visitation statute violates the Walleys’ right to due process.

¶ 20. The Walleys predicate their due-process argument on the fact that there was no finding that the Walleys are unfit parents and that the chancellor gave no weight to their determinations concerning visitation. The Walleys contend that, as a result, their fundamental right to make decisions as to the care, custody, and control of their children under the Fourteenth Amendment to the United States Constitution has been violated.
¶21. Because the contentions upon which this claim is based are dispensed with above, they will not be repeated here. Due deference and consideration were given to the wishes of the Walleys. Section 98-16-8 does not permit the Walleys to deny visitation unreasonably where the Pierces have a viable relationship with the minor children and where visitation is in the best interests of the children. Accordingly, this issue is without merit.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF GREENE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., MYERS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. RUSSELL, J., NOT PARTICIPATING.

. The Walleys stipulated that the Pierces had established a viable relationship with the children.