ISHEE, J.,
for the Court:
¶ 1. Lisa Boyd appeals the decision of the Leake County Chancery Court awarding custody of her five minor children to her ex-husband, Matthew Boyd. Lisa argues that the chancellor erred by (1) deeming Matthew’s requests for admissions admitted when denials were timely filed, according to the court’s scheduling order, and using those admissions to determine child custody; (2) refusing to honor the custody choice by a child over the age of twelve years; (3) misapplying the Al-bright factors; and (4) failing to apply and interpret properly the spousal-and-child-abuse statute.
FACTS
¶ 2. Lisa and Matthew were married on August 7, 1998. Matthew was employed as a systems and business manager at Mississippi Baptist Health Systems in Jackson, Mississippi, while Lisa was a licensed practical nurse at the Sunshine Medical Clinic in Canton, Mississippi. Lisa had two children from two previous marriages: Cayla Delaine, born June 6, 1990; and Mariah Danielle, born May 11, 1995. During the marriage, Matthew legally adopted the two girls. Matthew had also been married twice previously, but he had no children from either marriage. Four other children were born over the course of the marriage: Megan Ashley, born March 20, 1999; Margaret Ellen Re-cle, born June 30, 2001; and twins, Madeline Lisa and Emily Anna, born June 22, 2003.
¶ 3. On December 13, 2007, Lisa filed for divorce in the Leake County Chancery Court, citing Matthew’s habitual cruel and inhuman treatment toward her and, in the alternative, irreconcilable differences. The chancery court approved the parties’ agreed temporary order on December 19, 2007, which called for joint custody, with alternating custody of the children every other week. The temporary order also appointed a guardian ad litem (GAL) for the children and directed that the GAL monitor the custody arrangement and file a preliminary report as to whether the custody arrangement was in the best interests of the children. On April 16, 2008, Matthew answered Lisa’s complaint and filed a counterclaim for divorce, claiming that Lisa was guilty of habitual cruel and inhuman treatment and adultery and, alternatively, that irreconcilable differences had arisen and existed between the parties.
¶ 4. Matthew propounded ten requests for admission to Lisa and filed these re *413 quests with the chancery court on April 16, 2008, at the same time that he filed his answers to the complaint and counterclaim for divorce. Lisa failed to answer these requests within the required time allotted, which would have been in May 2008. However, the chancery court issued the first agreed scheduling order on October 1, 2008, which set a trial date for February 25, 2009. The order required that all responses to requests for admission, interrogatories, written depositions and documents be produced to each party by February 1, 2009. Lisa failed to meet this deadline as well. Matthew then filed a motion to compel answers to interrogatories and requests for production of documents. The scheduling order also set the trial date for February 25, 2009. The chancery court granted a joint motion for a continuance of the February trial and set a new trial date for March 25, 2009.
¶ 5. It is unclear why the trial set for March 25, 2009, did not occur on that date. However, the record shows that a second agreed scheduling order was entered setting another trial date for August 26-27, 2009. Included in the order was a new deadline for “all responses to the requests for admissions, interrogatories, written depositions and documents” to be produced by each party by July 1, 2009. At this time, Lisa had not submitted any pretrial discovery requests to Matthew. However, Lisa filed her answers to Matthew’s interrogatories, requests for production, and requests for admission on April 20, 2009. Lisa then served Matthew with her first set of interrogatories and requests for production on April 80, 2009. Matthew submitted his answers to these requests on July 10, 2009. Dissatisfied with Lisa’s responses to the interrogatories and requests for production of documents, Matthew filed a motion to compel her answers. Matthew later filed a motion to deem those matters admitted.
¶ 6. Lisa requested a continuation of the August trial date after receiving a copy of an amended report by the GAL wherein the GAL recommended a change from his previous recommendation. The GAL changed his previous recommendation of joint custody, and instead recommended that Matthew have full custody of the five minor children, and that Lisa have custody of Cayla, who was then a college student.
¶ 7. In his initial report, the GAL noted that Lisa and Matthew were on opposite ends of the parenting spectrum. Matthew was tougher on the children than Lisa was, and more demanding about keeping the house clean, chores completed, and sticking to a schedule. Lisa had cited several instances of Matthew’s violent behavior toward her and the children. The GAL stated that these events occurred when Lisa interfered with something Matthew was doing — in most cases, enacting harsh discipline on the children. The GAL recommended that Matthew seek anger-management counseling. He also noted that both parents drank in the presence of the children, but he did not find any immoral behavior on the part of either parent. However, he noticed during his visits that the three older girls had been aloof to Matthew, that Megan was very close to Mariah, and that Cayla was very close to Lisa. Cayla did not have a good relationship with Matthew. Nonetheless, the GAL recommended joint custody for the younger children, with Lisa having sole custody of Cayla.
¶ 8. In his second report, the GAL stated that Matthew had attended anger-management counseling, and Matthew had read about and studied parenting issues. Lisa had also completed a parenting class at her church. The GAL again noticed that Lisa was more lenient with the children, did not keep up with regular house *414 chores such as laundry or washing the dishes, and was prone to getting the children to school late. When the GAL asked Mariah, the twelve-year-old, about her preference to live with either parent, she informed the GAL that she had no preference. He recommended that the children not be separated, with Matthew awarded custody of the five younger children and Lisa receiving liberal visitation. The GAL again recommended that Lisa be awarded primary custody of Cayla.
¶ 9. The parties eventually withdrew their fault grounds and submitted the following issues to be determined by the court: (1) custody and visitation of the children; (2) child support; (8) who would claim the children as a tax deduction for federal and state income taxes; (4) who would pay health insurance for the minor children; (5) use and ownership of the three marital vehicles; and (6) payment of the GAL’s fees. A new trial date was set for November 18, 2009.
¶ 10. On the second day of trial, the chancellor granted Matthew’s motion to deem the matters admitted. Lisa’s attorney objected and requested an extension of time in which to answer the admissions or, in the alternative, to amend the answers. The chancellor denied Lisa’s request, and Lisa subsequently filed a motion to reconsider. The chancellor noted that pursuant to the rules, more than thirty days had elapsed since the requests for admission and no answer in conformity with the Mississippi Rules of Civil Procedure had been served. The chancery court also noted that Lisa had failed to file a motion to withdraw or amend the requests for admission, or seek any other relief pursuant to the rules of civil procedure, and the chancellor found that the rules did not permit an ore tenus motion on the second day of trial. Thus, the following statements were deemed admitted:
(1) Lisa and Matthew were married on or about August 7,1998.
(2) Lisa has been guilty of habitual cruel and inhuman treatment toward Matthew.
(3) The habitual cruel and inhuman treatment by Lisa caused the separation on or about the 13th day of December 2007 in Leake County, Mississippi.
(4) While married to Matthew, Lisa committed adultery.
(5) The adultery caused the separation of the parties therein, on or about the 13th day of December 2007.
(6) Lisa has taken Ritalin or similar drug that was prescribed for one of her children during the marriage.
(7) Matthew has been the primary [caregiver] for said children prior to the separation of the parties therein.
(8) Matthew’s mother delivered and picked up the children from school, daycare[,] and church due to Lisa not being dependable.
(9) The children request that Matthew deliver them to school due to Lisa not being able to have the children delivered on time.
(10) Lisa did not consult with Matthew in her decision to [allow] the children [to] receive the Gardasil HPV Vaccine.
¶ 11. At trial, Lisa vehemently denied that she had committed adultery. Matthew denied that he had been violent with either Lisa or the children during the marriage. However, he did admit to pushing Lisa so hard that she broke her tail bone, drinking alcohol when the children were present, and spanking the children. He also stated that he had sought anger-management counseling, and he did not drink as much when he was caring for the children.
*415 ¶ 12. The GAL testified that both parents were loving parents. However, the GAL noted that Matthew and Lisa demonstrated much different parenting styles. Matthew was more of a disciplinarian, while Lisa was more lax, yet more nurturing. The GAL reiterated his recommendation that Matthew be awarded primary custody of the five younger children, and Lisa be awarded sole custody of the eldest daughter, Cayla.
¶ 13. On January 5, 2010, the chancery court entered its opinion and final judgment. The chancellor granted the divorce and awarded primary custody of the five younger girls to Matthew, with Lisa receiving liberal visitation. Lisa was awarded primary custody of Cayla, with Matthew receiving liberal visitation. In the written opinion, the chancellor accepted the GAL’s recommendation for custody, and she also took Lisa’s admissions into account. Aggrieved, Lisa timely appealed.
STANDARD OF REVIEW
¶ 14. In child-custody matters, the polestar consideration must be the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Our review of child-custody decisions is “quite limited in that the [c]haneellor must [have been] manifestly wrong, clearly erroneous, or [have applied] an erroneous legal standard in order for this Court to reverse.” In re Custody of M.A.G., 859 So.2d 1001, 1004 (¶ 8) (Miss.2003) (citations omitted). If the correct legal standard has been applied and the chancellor has made findings of fact which are supported by substantial evidence, this Court will not reverse a chancellor’s judgment. Id. at 1003 (¶ 4) (citation omitted). We will not substitute our “judgment for that of the chancellor, even if [we disagree] with the findings of fact and would arrive at a different conclusion.” Reed v. Fair, 56 So.3d 577, 580 (¶ 7) (Miss.Ct.App.2010) (citation omitted). However, we review a chancellor’s interpretation and application of the law de novo. Id. (citation omitted).
DISCUSSION
I. Requests for Admission
¶ 15. Lisa argues that the chancery court erred by deeming Matthew’s requests for admission admitted, by overruling Lisa’s motion to reconsider, and by considering Lisa’s admissions as a major factor in its reasoning for awarding custody of the children to Matthew.
A. Requests for Admission Deemed Admitted
¶ 16. Lisa relies on a second agreed-upon scheduling order filed by the chancery court and signed by both parties’ counsel on April 1, 2009, which states that all responses to requests for admissions, interrogatories, written depositions, and production of documents must be submitted. to each respective party by July 1, 2009. Lisa filed her responses to Matthew’s counterclaim for divorce, requests for production, and interrogatories on April 20, 2009. Included in these documents were her answers to Matthew’s requests for admission.
¶ 17. Matthew originally sent his requests for admission to Lisa the year before on April 16, 2008. She failed to respond to the requests within the required time under Mississippi Rule of Civil Procedure 36. The first agreed-upon scheduling order, which was signed by the chancellor and both parties’ counsel, required the answers to the requests for admission be served on each party by February 1, 2009. Lisa again failed to meet the deadline. Instead, she filed a motion for a continuance on February 18, 2009, which continued the case until March 25, 2009. On April 1, 2009, a second agreed-upon sched *416 uling order was filed, which provided a general requirement that the parties were to provide “all responses to requests for admissions” by July 1, 2009. Again, the chancellor, as well as both parties’ counsel, signed this order. Operating under this second scheduling order, Lisa finally submitted her responses to Matthew’s requests for admission on April 16, 2009.
¶ 18. At trial, Lisa’s counsel requested an opportunity to amend, supplement, and file a response to Matthew’s requests for admission, which the chancery court denied. The chancellor stated that Rule 36 did not support an oral request during trial. Lisa’s counsel then asked if the chancery court would allow the responses submitted on April 17, 2009, to be admitted for identification purposes, which the chancellor also denied.
¶ 19. We note from the outset that this Court has strictly enforced the application of Rule 36 according to its terms. Gilcrease v. Gilcrease, 918 So.2d 854, 857 (¶ 5) (Miss.Ct.App.2005) (citing Educ. Placement Servs. v. Wilson, 487 So.2d 1316, 1318 (Miss.1986)). The rule states that a party has thirty days in which to submit a response to a request for admission, or within forty-five days after service of the summons upon a defendant. M.R.C.P. 36(a). Matters will be deemed admitted after this time period, unless the court allows for either a shorter or longer period of time in which to answer. Id. However, the trial court, on motion, has the discretion to “permit withdrawal or amendment [of a matter admitted] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.” M.R.C.P. 36(b). Further, the trial court has considerable discretion over matters of discovery, and we will not disturb those decisions absent an abuse of discretion. In re Dissolution of Marriage of Leverock & Hamby, 23 So.3d 424, 432 (¶ 26) (Miss.2009) (citations omitted). Specifically, “[a] certain amount of discretion is vested in the [chancellor] with respect to whether he or she will take matters as admitted.” Earwood v. Reeves, 798 So.2d 508, 514 (¶ 19) (Miss.2001) (citation omitted).
¶ 20. Matthew argues that Lisa did not seek any relief provided under Rule 36(b) to amend or withdraw the admissions. Moreover, Matthew asserts that the second scheduling order in 2009 does not apply to his initial request for admissions, because the deadline for Lisa to answer that request had already passed in 2008. He claims that the second scheduling order was meant to address additional discovery, and it was not meant to address requests that had already been submitted to the parties. At the time of the second scheduling order, Lisa had not served Matthew with any discovery requests of her own. However, on April 30, 2009, following the second agreed-upon scheduling order, Lisa served Matthew with a first set of interrogatories and requests for production.
¶ 21. The record is clear that Lisa filed her responses to Matthew’s requests for admission almost one year after they were due. She failed to request a withdrawal or amendment of the admissions prior to trial, nor did she provide the chancery court with any excuse to justify the dilatory response. Thus, the operation of the rules deems the matters admitted. M.R.C.P. 36(a). “Matters admitted by default under Rule 36(a) are established unless and until the trial court allows amendment or withdrawal by motion under Rule 36(b).” DeBlanc v. Stancil, 814 So.2d 796, 799 (¶ 17) (Miss.2002) (citation omitted). Any difficulty with the case “could easily have been *417 eliminated if a motion to withdraw or amend the answers had been filed pursuant to Rule 36(b) and if there were justifiable excuse.” Scoggins v. Baptist Mem’l Hosp.-Desoto, 967 So.2d 646, 649 (¶ 15) (Miss.2007).
¶22. The chancellor noted that Matthew filed a motion in August 2009 to deem the matters admitted, yet Lisa waited until the second day of trial to make an oral request to amend the admissions. We do find the chancellor erred in stating that Rule 36 does not support an oral request at trial for the amendment. Rule 36 is silent as to when a request for withdrawal or amendment must be made. M.R.C.P. 36. However, we cannot say that the chancery court abused its discretion in denying Lisa’s oral request to amend the admissions. She had multiple opportunities to answer the requests for admission, or seek the withdrawal of or to amend the admissions, but she failed to avail herself of the remedies provided under Rule 36(b). Therefore, Lisa’s argument that the requests for admission should not have been admitted lacks merit.
B. Using Requests for Admission in Albright Analysis
¶ 23. Lisa also argues that the chancery court erred by relying on the admissions to determine custody of the five minor children. We have previously addressed the issue of admissions in child-custody matters. Gilcrease, 918 So.2d at 859 (¶ 8). In Gilcrease, we held that “[c]hild custody is a judicial determination, and is never to be regarded as a merely evidentiary matter.” Id. Thus, basing a determination of child custody solely on a Rule 36 admission is improper. Id. at 858 (¶ 7).
¶ 24. In the present case, the chancellor used three admissions as part of her Al-bright analysis to determine child custody:
(1)Continuity of Care Prior to Separation
¶ 25. Lisa admitted that Matthew was the children’s primary caregiver prior to the separation. The chancellor noted that Matthew was primarily responsible for the household duties, and he ensured that certain chores were completed. Matthew also prepared many of the evening meals for the family. Both parents took the children to doctors’ appointments. The chancellor found that this factor favored Matthew.
(2)Parenting Skills
¶ 26. Lisa admitted that Matthew’s mother had to deliver and pick up the children from school, daycare, and church because she was not dependable and that the children requested Matthew deliver them to school because she was unable to have them there on time. The chancellor found that Matthew was more structured and a stronger disciplinarian. Although Matthew had verbally degraded Lisa and the children prior to the separation, this type of behavior had lessened in frequency since the separation. The GAL’s report listed Lisa’s lack of supervision and the children’s tardiness to school as concerns. While Lisa was shown to be more willing to work with Matthew on issues regarding the children, she failed to consult with Matthew before starting the children on the Human Papillomavirus Vaccine, Garda-sil. Thus, the chancellor found this factor to favor Matthew.
(3)Moral Fitness of the Parent
¶ 27. Lisa admitted that she had committed adultery and that her habitual cruel and inhuman treatment toward Matthew had led to the parties’ separation. However, the chancellor also noted that both parents were active in their respective churches, and they both took the children to church regularly. Matthew drank alcohol in the children’s presence, and he had verbally berated the children in the past. *418 The chancellor found that this factor favored neither parent.
¶ 28. Upon a thorough review of the record, we do not find that the chancellor abused her discretion. While three of the ten admissions were used in the chancery court’s analysis, it is clear that the admissions were not the sole basis for the custody decision. The chancellor heard all of the testimony at trial and used the GAL’s report as part of her consideration, in addition to the admissions by Lisa. Therefore, this issue is without merit.
II. Non-Minor Child and Custody Preference
¶ 29. Lisa further argues that the chancellor erred by awarding custody of Mariah, age fourteen, to Matthew, after Mariah had stated a preference to live with her biological mother, Lisa. Mariah initially told the GAL that she did not have a preference for either parent. However, the day before trial, Mariah filed a preference statement choosing to live with Lisa. At trial, Mariah testified in support of her preference statement, again asserting that she wished to live with her mother.
¶ 80. The GAL testified at trial that Lisa was a good mother, and he did not offer a reason why Mariah should be placed in Matthew’s custody, other than he did not recommend separating the five younger children. The GAL further stated that if Mariah chose to live with her mother, he was fine with that. He stated that his concern of joint custody was due to the stress involved with alternating custody every other week, as it would be taxing on the children. Thus, the GAL recommended that the chancery court award primary physical custody to one parent, Matthew. The chancellor awarded custody of Mariah to her adopted father, Matthew.
¶ 31. A child’s preference may be taken into account in determining child custody. Mississippi Code Annotated section 93 — 11—65(l)(a) (Supp.2011) states:
[I]f the court shall find that both parties are fit and proper persons to have custody of the children, and that either party is able to adequately provide for the care and maintenance of the children, the chancellor may consider the preference of a child of twelve (12) years of age or older as to the parent with whom the child would prefer to live in determining what would be in the best interest and welfare of the child. The chancellor shall place on the record the reason or reasons for which the award of custody was made and explain in detail why the wishes of any child were or were not honored.
The chancellor is not bound by the election of a minor child. Floyd v. Floyd, 949 So.2d 26, 30 (¶ 12) (Miss.2007). However, if a chancellor refuses to follow a child’s election, the chancellor must place into the record the reasons for the refusal. Id.
¶ 32. In her final judgment and opinion, the chancellor noted the following regarding the children’s preference:
Two of the six children are of an age to elect a preference for custody purposes: Cayla and Mariah. Both young ladies have chosen Lisa as the parent they would like to live with on a full-time basis. Neither child consulted the GAL before making this preference. In fact, Mariah had previously told the GAL that she had no preference for custodial purposes. This factor favors Lisa as it applies to Cayla and Mariah but favors neither parent as it applies to the younger four children.
Notwithstanding Mariah’s preference, the chancery court went on to note in its analysis of “other factors” that separating the *419 siblings would not be in the best interests of the children:
Mariah has also stated her preference to live with Lisa though her preference was not stated with the same level of determination as was Cayla’s preference. A divorce can be traumatic on children; this Court is wary to add to a child’s new normal the adjustment to a daily routine without her siblings.
The chancery court further referenced the GAL’s written recommendation to award sole custody of Cayla to Lisa and primary physical custody of the other five children to Matthew, with Lisa being awarded liberal visitation.
¶ 33. From the language of the chancery court’s judgment, it appears that the chancellor was concerned with separating the minor siblings. While we accept there is a “strong preference ... for keeping siblings together unless unusual circumstances justify their separation,” keeping siblings together is not required. Reed, 56 So.3d at 584 (¶ 31) (citations omitted). The GAL recommended that Matthew receive physical custody of the five minor children and that Lisa receive liberal visitation. Although the chancery court did not honor Mariah’s preference to live with her mother, we cannot find that the chancery court manifestly erred by awarding custody of Mariah to Matthew. Accordingly, this issue is without merit.
III. Application of Custody Statute When Evidence of Domestic Violence is Presented
¶ 34. Lisa also argues that the chancery court failed to make written findings to document how and why the presumption of Matthew having a history of family violence was rebutted under Mississippi Code Annotated section 93-5-24(9)(a)(i) (Rev.2004). While Lisa did not raise the issue at trial, the Court found the presumption was triggered under the statute due to the incident where Matthew was in the kitchen disciplining Cayla and pushed Lisa into the dishwasher, breaking Lisa’s tail bone.
¶ 35. Mississippi Code Annotated section 93 — 5—24(9)(a) states:
(i) In every proceeding where the custody of a child is in dispute, there shall be a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody or joint physical custody of a parent who has a history of perpetrating family violence. The court may find a history of perpetrating family violence if the court finds, by a preponderance of the evidence, one (1) incident of family violence that has resulted in serious bodily injury to, or a pattern of family violence against, the party making the allegation or a family household member of either party. The court shall make written findings to document how and why the presumption was or was not triggered.
(ii) This presumption may only be rebutted by a preponderance of the evidence.
(iii) In determining whether the presumption set forth in subsection (9) has been overcome, the court shall consider all of the following factors:
1. Whether the perpetrator of family violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child because of the other parent’s absence, mental illness, substance abuse[,] or such other circumstances which affect the best interest of the child or children;
2. Whether the perpetrator has successfully completed a batterer’s treatment program;
*420 3. Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate;
4. Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate;
5. If the perpetrator is on probation or parole, whether he or she is restrained by a protective order granted after a hearing, and whether he or she has complied with its terms and conditions; and
6. Whether the perpetrator of domestic violence has committed any further acts of domestic violence.
(iv) The court shall make written findings to document how and why the presumption was or was not rebutted.
¶ 36. Lisa contends that the chancellor ignored numerous incidents of Matthew’s violence over a prolonged period of time, which should have triggered the presumption. Instead, the chancery court found the statute was triggered by only one incident where Matthew broke Lisa’s tail bone. Lisa further argues that the chancellor failed to cover all of the factors necessary to rebut the presumption of violence, and she failed to make written findings which are required to document how and why the presumption was or was not rebutted. Lawrence v. Lawrence, 956 So.2d 251, 263 (¶ 43) (Miss.Ct.App.2006).
¶ 37. At trial, Lisa testified that Matthew had a history of family 'abuse, citing multiple instances of Matthew hitting and pushing her, grabbing Cayla by her neck, swatting Margaret with a fly swatter, and spanking Margaret as she walked down stairs causing her to tumble down the stairs. During one episode, Lisa further asserted that Matthew pushed her so hard against the kitchen counter that she broke her tail bone. Matthew adamantly testified that no violence occurred during their marriage, but he did admit that he spanked the children, including spanking Cayla when she was sixteen years old, and spanking Margaret which caused her to fall down the stairs. He also explained in his testimony that Lisa broke her tail bone after she had jumped on his back when he was spanking Cayla, and when he threw her off of his back, Lisa fell onto the floor and broke her tail bone.
¶ 38. The GAL investigated Lisa’s claims of Matthew’s violence. He found that Matthew had never been charged with or convicted of domestic violence, and the only incident that resulted in serious bodily injury, which would have triggered the domestic-violence statute, could have been considered an accident. The chancellor stated that after considering the testimony and GAL’s report, she did not find that Matthew intended to injure Lisa or Cayla during that incident.
¶ 39. Although intent is not required in order to trigger the presumption, the chancellor held that the presumption had been overcome by Matthew voluntarily completing anger-management counseling, seeing a counselor at times when issues arose, and by abstaining from alcohol in the presence of the children. She also noted that the incident occurred several years ago, and no further acts of violence had been reported.
¶ 40. Given the chancellor’s findings of fact on the record, we do not find her decision to be an abuse of discretion. Accordingly, this issue lacks merits.
IV. Albright Factors
¶ 41. Lisa concludes her argument by asserting that had the chancellor not erroneously considered the admissions, ignored Mariah’s preference, and misap *421 plied the spousal-and-child-abuse statute, the Albright factors would have favored Lisa.
¶ 42. The Albright factors, used to determine child custody based on the best interest of the child, include: (1) age, health and sex of the child; (2) determination of the parent who had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Albright, 437 So.2d at 1005.
¶ 43. In her written opinion, the chancellor went through an extensive analysis of each of these factors. After a thorough review of the analysis and the record, we cannot rule that she erroneously applied the factors in determining the best interests of the five minor children. The Albright child-custody factors are not meant to be afforded equal weight; “one or two factors may weigh more heavily and control the custody determination.” Reed, 56 So.3d at 582 (¶ 18).
¶ 44. The chancellor listened to witness testimony and considered the evidence, including the GAL’s recommendation. The chancellor made findings of fact and conclusions of law on each factor presented. Some of the factors favored Lisa, while others favored Matthew, or neither parent. Because the chancellor is in the best position to evaluate all factors relating to the best interest of the child, our review is limited. Henderson v. Henderson, 952 So.2d 273, 278 (¶ 13) (Miss.Ct.App.2006) (citation omitted).
¶ 45. Based on the written findings in the record, we hold that the chancellor did not abuse her discretion in weighing the Albright factors. This issue is also without merit. Therefore, we affirm the chancellor’s judgment.
¶ 46. THE JUDGMENT OF THE LEAKE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ„ CONCUR.