MAXWELL, J.,
for the Court:
¶ 1. The right to grandparent visitation is purely statutory and may only be considered if the grandparent meets certain statutory criteria. The criteria in Mississippi’s grandparent-visitation statute are important. By placing limitations on who may petition for visitation, the criteria keep a grandparent’s statutory right to visitation from impermissibly encroaching on the parents’ rights to rear their children as they see fit.
¶ 2. Because we find Dorothy and Jack Quartaro failed to show they met the statutory criterion of the establishment of a viable relationship with their two granddaughters, we reverse the award of statutory grandparent visitation. But we affirm the denial of the granddaughters’ parents’ request for attorney’s fees, as the parents failed to show financial hardship would otherwise result.
Factual Background
¶ 3. Dorothy and Jack Quartaro are the parents of Shassidy Aydelott. Shassidy is married to Adam Aydelott. The Aydelotts have one daughter, Ryver, who was two at the time of the visitation hearing. Shassi-dy also has another daughter, Acelynn Sa-lazer, who was five at the time of the hearing. (Acelynn’s father, Chris Salazar, while named as a defendant in the visitation matter and served with process, did not participate and has not joined this appeal.)
¶ 4. To say the Quartaros and the Ayde-lotts do not have a good relationship is an understatement. According to the chancellor, he had “never seen so much hatred and animosity manifested.” According to Shassidy, her relationship with her mother had always been contentious — but things took a turn for the worse when her parents were divorcing and her mother accused her of taking her father’s side. (The Quartaros, whose marriage was annulled based on Jack’s bigamy, later reconciled and remarried.) But according to Dorothy, it was Adam’s joining the family that caused the rift — especially when Dorothy alerted law-enforcement officials that Adam had received stolen property.
¶ 5. Though they disagree why, neither side disputes that in 2009 the Aydelotts and Quartaros stopped speaking. And the *100 Aydelotts cut off the Quartaros’ access to Aeelynn and only allowed the Quartaros to see Ryver one or two times right after she was born. So in September 2010, the Quar-taros petitioned to establish grandparent-visitation rights with Aeelynn and Ryver under Mississippi Code Annotated section 93-16-3 (Supp.2012). While the petition was pending, the Aydelotts decided to move from their manufactured home, located on the Quartaro’s property just fifty yards from the Quartaros’ house, into an apartment thirty-five miles away.
¶ 6. Prior to the visitation hearing, the Aydelotts petitioned for attorney’s fees under Mississippi Code Annotated section 93-16-3(4), which directs chancellors to award the parents’ attorney’s fees upon motion and prior to a visitation hearing “except in cases in which the court finds that no financial hardship will be imposed upon the parents.” Finding no such hardship would be imposed on the Aydelotts, the chancellor denied their motion.
¶ 7. After a hearing, the chancellor applied the factors from Martin v. Coop, 693 So.2d 912, 916 (Miss.1997), and determined it was in the best interest for the Quarta-ros to be awarded visitation with Aeelynn and Ryver. The chancellor then found there was “a viable relationship established to the extent that the grandparents could[.]” The chancellor awarded the Quartaros a day visit once a month for the first six months, then, after that, an overnight visit once a month.
¶ 8. The Aydelotts appeal both the grant of grandparent visitation and the denial of attorney’s fees.
Discussion
I. Grandparent Visitation

A. Purely Statutory Right

¶ 9. There is no common-law right to grandparent visitation. T.T.W. v. C.C., 839 So.2d 501, 504 (¶ 7) (Miss.2003). The right is purely statutory and may only be considered if the statutory criteria are met. Woodell v. Parker, 860 So.2d 781, 785-86 (¶ 15) (Miss.2003); In re Adoption of a Minor, 558 So.2d 854, 856 (Miss.1990). Mississippi Code Annotated section 93-16-3 permits grandparents to petition for visitation in two circumstances. The first circumstance, which is not relevant here, is when a grandparent can show his or her own child has not been awarded custody of the grandchild, has had parental rights terminated, or has died. Miss.Code Ann. § 93-16-3(1). The second circumstance is when a grandparent has shown (1) that a “viable relationship” with his or her grandchild has been established, (2) that visitation with the grandchild has been unreasonably denied by the grandchild’s parent, and (3) that visitation is in the best interest of the grandchild. Miss.Code Ann. § 93-16-3(2).
¶ 10. For the Quartaros to have the statutory right to petition for visitation, they first had to show they “had established a viable relationship” with each granddaughter. Miss.Code Ann. § 93-16-3(2)(a). Section 93-16-3(3) explains that a “viable relationship” is a relationship in which a grandparent has:
(1) “voluntarily and in good faith supported the child financially in whole or in part for a period of not less than six (6) months before filing any petition for visitation rights with the child,”
(2) “had frequent visitation including occasional overnight visitation with said child for a period of not less than one (1) year, or”
(3) “cared for [the grandchild] over a significant period of time during the • time the parent has been in jail or on military duty that necessitates the absence of the parent from the home.”
*101 The Quartaros next had to show that “the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child[.]” Miss.Code Ann. § 93-16-3(2)(a).
¶ 11. Only by the Quartaros’ establishment of a viable relationship and unreasonable denial of visitation could the Quarta-ros reach the “polestar consideration” for statutory grandparent visitation — whether “visitation rights of the grandparent with the child would be in the best interests of the child.” Miss.Code Ann. § 93-16-3(2)(b); see T.T.W., 839 So.2d at 504 (¶ 10) (“The best interests of the child must be the polestar consideration in awarding grandparent visitation.”); see also Hillman v. Vance, 910 So.2d 43, 47 (¶ 11) (Miss.Ct.App.2005) (holding that, because chancellor found denial of visitation was reasonable, he could have disposed of the issue without conducting best-interest analysis under Martin). In Martin v. Coop, the Mississippi Supreme Court set forth ten factors for chancellors to use when determining a child’s best interest in the context of grandparent visitation. Martin, 693 So.2d at 916.

B. Constitutionality

¶ 12. Both the narrowing criteria of section 93-16-3 and the Martin factors keep Mississippi’s grandparent-visitation statute from running afoul of the constitutional rights of parents to rear their children as they see fit. Zeman v. Stanford, 789 So.2d 798, 803 (¶ 18) (Miss.2001). Since the United States Supreme Court’s decision Troxel v. Granville, 530 U.S. 57, 66-67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)—which struck down the state of Washington’s third-party child-visitation statute because it interfered with parents’ fundamental right to care, custody, and control of their children — Mississippi’s grandparent-visitation statute has been often challenged as violating that same fundamental right. E.g., Smith v. Wilson, 90 So.3d 51, 58-59 (¶¶ 22-24) (Miss.2012); Woodell, 860 So.2d at 785 (¶¶ 12-13); Stacy v. Ross, 798 So.2d 1275, 1279 (¶¶ 15-17) (Miss.2001); Zeman, 789 So.2d at 802-03 (¶¶ 16-19). In all those cases, our supreme court has upheld Mississippi’s statute as constitutional because, “[ujnlike the statute in Troxel, Mississippi’s grandparent-visitation statute is narrow, allowing grandparents (not any person) to seek visitation only under certain circumstances.” Smith, 90 So.3d at 58 (¶ 22) (emphasis added).
¶ 13. Indeed, in Troxel, “the [United States] Supreme Court distinguished Mississippi as being among those states which expressly provide limitations [.]” Stacy, 798 So.2d at 1279 (¶ 17) (emphasis added) (citing Troxel, 530 U.S. at 71, 120 S.Ct. 2054). And it is these “limitations imposed by this Court in its interpretation of [section] 93-16-3 [that] clearly result in the ‘narrower reading’ that was lacking in Troxel.” Zeman, 789 So.2d at 803 (¶ 18). Thus, it is important for a grandparent to show he or she meets the “certain circumstances” of section 93-16-3(2), not only to establish his or her statutory right to visitation, but also to ensure that the parents’ constitutional right “to care, custody, and control of their children” is not being violated. Stacy, 798 So.2d at 1279 (¶ 17) (citing Troxel, 530 U.S. at 65, 120 S.Ct. 2054).

C. The Quartaros’ Visitation Award

¶ 14. In this case, the “certain circumstance” the chancellor focused on was his finding that, based on the Martin factors, grandparent visitation would be in the best interest of Acelynn and Ryver. See Miss.Code Ann. § 93-16-3(2)(b). While the grandchildren’s best interest is the “polestar consideration,” it is not the only consideration.
*102 ¶ 15. The other two circumstances that had to be present to award statutory-grandparent visitation were (1) the Quar-taros’ establishment of a viable relationship with each granddaughter and (2) the Aydelotts’ unreasonable denial of grandparent visitation. Miss.Code Ann. § 93-16 — 3(2)(a). We find the chancellor’s findings on these criteria problematic for two reasons.

1. Rule 36 Admissions

¶ 16. First, the fact the Quartaros had not established a viable relationship had been “conclusively established” through the Quartaros’ responses to the Aydelotts’ requests for admissions made under Rule 36 of the Mississippi Rules of Civil Procedure. The Aydelotts had requested both Dorothy and Jack admit they “have not provided financial support for the minor children.” Both gave the same response and “admit[ted] the allegations contained in Request for Admission No. 12 due to the fact that [their] daughter throws the things away that the Plaintiff buys for the children.” The Quartaros were also asked to admit they “have not visited with the minor children in the last two years” and “have never had frequent visitation with the minor children which included overnight visits for a period of at least one year.” They also admitted they had never had frequent visitation, because Shassidy would not let them. Under Rule 36(b), “[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.” The Quar-taros never moved to have their admissions withdrawn or amended. So the fact they had never contributed financially to or had frequent visitation with their granddaughters — and thus had never established a viable relationship — had been conclusively established. See In re Dissolution of Marriage of Leverock & Hamby, 23 So.3d 424, 433 (¶33) (Miss.2009); Boyd v. Boyd, 83 So.3d 409, 416 (¶ 21) (Miss.Ct.App.2011).
¶ 17. Further, “[a]ny admission that is not amended or withdrawn cannot be rebutted by contrary testimony or ignored by the court even if the party against whom it is directed offers more credible evidence[.]” Gilcrease v. Gilcrease, 918 So.2d 854, 858 (¶ 5) (Miss.Ct.App.2005). Here, the chancellor seemingly ignored the admissions and permitted contradictory testimony that the Quartaros had contributed financially — by allowing Shassidy’s mobile home to be placed on their land — and had frequently visited Acelynn prior to the rift. This was clearly error. While Rule 36 gave the chancellor discretion to permit withdrawal or amendment of the admissions — and is silent about how and when the Quartaros could move for withdrawal or amendment — the fact remains that the Quartaros never moved for withdrawal or amendment, so the lack of financial contribution or frequent visitation were deemed admitted. See Boyd, 83 So.3d at 416-17 (¶¶ 21-22).
¶ 18. We acknowledge that, in the context of child custody, this court has viewed the error of failing to recognize an admitted matter as established and permitting contradictory evidence as merely procedural. Gilcrease, 918 So.2d at 859 (¶¶ 8-9). In Gilcrease, when a mother admitted, under Rule 36, that it was in her child’s best interest that custody be awarded to the father, this court found the chancellor’s refusal to deem the best-interest issue admitted was merely a procedural error “made with the proper result in mind.” Gilcrease, 918 So.2d at 859 (¶ 9). Because “[c]hild custody is a judicial determination” and not “merely [an] evidentiary matter,” this court held that it would not reverse based on the failure to recognize matters deemed admitted under Rule 36 “absent *103 some other mistake in the chancellor’s substantive decision[-]making process.” Gilcrease, 918 So.2d at 859 (¶¶ 8-9).
¶ 19. Grandparent visitation is different than child custody, as there are other evidentiary considerations besides the child’s best interest that must be considered — namely, whether the grandparent has produced sufficient evidence to show he or she is authorized under the statute to be awarded visitation. Still, while “Rule 36 is to be applied as written, ... ‘it is not intended to be applied in Draconian fashion.’ ” Leverock, 23 So.3d at 432 (¶ 28) (quoting DeBlanc v. Stancil, 814 So.2d 796, 801-02 (¶ 26) (Miss.2002)). Mindful of this tenet, even if we deemed the chancellor’s failure to recognize the Quartaros’ admissions under Rule 36 as merely procedural, we still must reverse due to a second, substantive error — the chancellor’s finding that a viable relationship may be established based on the grandparents’ desire to establish a relationship with their grandchildren.
2. Interpretation of a ‘Viable Relationship ”
¶ 20. At trial, the Quartaros were given the opportunity to “interpret” their Rule 36 admissions — and to the extent they were not trying to contradict their admissions, we find nothing improper with allowing them to explain their responses. The Quartaros testified they would have established a viable relationship through financial contributions and frequent visitation with Acelynn and Ryver, had the Ay-delotts let them. The chancellor clearly relied on this testimony to find the Quarta-ros had established a viable relationship with both granddaughters “to the extent that they could.” In other words, it was not the establishment of a viable relationship but rather the desire to establish a viable relationship that weighed heavily in the chancellor’s finding the Quartaros were statutorily entitled to grandparent visitation. We find weighing the Quarta-ros’ wishes into whether there was a viable relationship was error.
¶ 21. The grandparent-visitation statute' is clearly limited to grandparents who can show they already had an established viable relationship, which was unreasonably cut-off by the parents. See Miss.Code Ann. § 93—16—3(2)—(3); see also T.T.W., 839 So.2d at 506 (¶15) (holding that a grandmother who, despite her attempts, had not seen her grandchild for three years was entitled to visitation because, prior to being cut off, she had established a viable relationship). We find that broadening the limiting criterion of a “viable relationship” to grandparents who wish they had a viable relationship would render the grandparent-visitation statute unconstitutional because it would permit any grandparent to petition for visitation — and not just those who meet the narrow circumstances under the statute. See Smith, 90 So.3d at 58 (¶ 22) (“Mississippi’s grandparent-visitation statute is narrow, allowing grandparents (not any person) to seek visitation only under certain circumstances.”). By limiting the right to petition to only those grandparents who were initially permitted by the parents of their grandchildren to establish a viable relationship but later were unreasonably cut off by those same parents, the statute properly acknowledges the constitutional rights of parents to rear their children as they see fit. Zeman, 789 So.2d at 803 (¶ 18) (citing Troxel, 530 U.S. at 67, 120 S.Ct. 2054). For example, in Stacy, the parents stipulated they had allowed a viable relationship to be established because they relied on the grandparents’ childcare and financial support of the grandchildren. Stacy, 798 So.2d at 1277 (¶ 6), 1280 (¶ 20). But the award of grandparent visitation *104 was nonetheless reversed because there was no finding the parents, after their relationship with the grandparents had de-' teriorated, had unreasonably denied visitation. Id. at 1280 (¶ 28), 1282 (¶¶ 29-30).
¶ 22. Here, the chancellor never explicitly found the Aydelotts had unreasonably denied the Quartaros visitation — though such a finding can be inferred from the chancellor’s admonition of Shassidy for not letting the Quartaros see her children. From this admonition, it appears the chancellor thought the Quartaros had a right to have a relationship with their grandchildren simply because they were grandparents — and not because they met the criteria of section 98 — 16—8(2)(a). And he thought denial of visitation was unreasonable simply because grandchildren should have a relationship with their grandparents. But the question is not whether the parents denied visitation — it is whether such a denial was “unreasonable.” Hillman, 910 So.2d at 47 (¶¶ 11-12) (affirming denial of grandparent visitation because parent’s denial of visitation was reasonable under the circumstances).
¶ 28. “The determination whether parents are unreasonable in denying visitation in whole or part to grandparents is not a contest between equals. Parents with custody have a paramount right to control the environment, physical, social, and emotional, to which their children are exposed.” Stacy, 798 So.2d at 1280 (¶ 23) (citations omitted). In implicitly finding the Aydelotts unreasonably denied visitation, the chancellor failed to give deference to the Aydelotts’ paramount right to control their children’s environment and instead treated the parents and grandparents as equals.
¶ 24. “The constitutionality of any standard for awarding visitation ‘turns on the specific manner in which that standard is applied.’ ” Stacy, 798 So.2d at 1279 (¶ 18) (quoting Troxel, 530 U.S. at 73, 120 S.Ct. 2054). Because the chancellor did not give the grandparent-visitation statute the necessary “ ‘narrower reading that was lacking in Troxel,” we find his explicit finding of a viable relationship and implicit finding of unreasonable denial of visitation fail to pass constitutional muster. See Zeman, 789 So.2d at 803 (¶ 18).
¶25. We find the procedural error of not deeming the failure to establish a viable relationship as having been admitted, combined with the constitutional error of interpreting the grandparent-visitation statute too broadly, requires that we reverse the award of grandparent visitation. As in Stacy, “with an interest in judicial economy and conservation of the resources of the parties” — as well bringing finality to a highly contentious dispute — we render judgment in favor of the Aydelotts. See Stacy, 798 So.2d at 1282 (¶ 30).
II. Attorney’s Fees
¶ 26. We affirm, however, the denial of the Aydelotts’ request for attorney’s fees. Under the grandparent-visitation statute, “[t]he court shall on motion of the parent or parents direct the grandparents to pay reasonable attorney’s fees to the parent or parents in advance and prior to any hearing, except in cases in which the court finds that no financial hardship will be imposed upon the parents.” Miss.Code Ann. § 93-16-3(4). The question whether the Aydelotts were entitled to attorney’s fees or the no-financial-hardship exception applied is one “entrusted to the sound discretion of the [chancellor].” Zeman, 789 So.2d at 806 (¶ 30) (citations omitted).
¶ 27. Here, based on evidence the Ay-delotts’ combined income and expenses left sufficient disposable income for travel and entertainment and extra vehicles, the chancellor found no financial hardship *105 would result from their having to pay their own attorney’s fees. We find no abuse of discretion in this finding. Further we note the fact that we are reversing the outcome at the chancery-court levél does not impact whether attorney’s fees should be awarded. Section 93-16-3(4) provides the court may direct the payment of attorney’s fees when financial hardship would arise “regardless of the outcome of the petition.”
¶ 28. THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL SHALL BE DIVIDED EQUALLY BETWEEN THE APPELLANTS AND THE APPELLEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.