# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01207-COA

**CHRISTOPHER WAYNE EAVES**                                                 **APPELLANT**

**v.**

**DAVID DARNELL GATLIN AND DEBORA**                              **APPELLEES**
**GAYLE (GIBSON) GATLIN**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2014 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JERRY WESLEY HISAW |
| | JENNIFER LOUISE MORGAN |
| ATTORNEYS FOR APPELLEES: | ALAN D. LANCASTER |
| | JONATHAN RYAN TAYLOR |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DENIED MOTION FOR RECONSIDERATION |
| DISPOSITION: | AFFIRMED - 12/01/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, J., FOR THE COURT:**

¶1.    Christopher Eaves appeals the chancellor's grant of grandparents' visitation to his daughter's maternal grandparents. He argues the chancellor failed to adequately consider the *Martin*[1] factors and improperly awarded the grandparents too much visitation. After review, we find no error in either the chancellor's application of the statutory requirements for

---

    [1] In *Martin v. Coop*, 693 So. 2d 912, 916 (Miss. 1997), the Mississippi Supreme Court established ten factors for chancellors to use when determining a child's best interest in the context of grandparent visitation.

grandparents' visitation or her assessment of the *Martin* factors. And we find the visitation awarded was not excessive. We thus affirm.

**Facts and Procedural History**

¶2. On May 20, 2009, Christopher Eaves and Stacie Gatlin had a daughter out of wedlock. Their daughter, Savannah Mae Eaves, was born while Stacie was a junior in high school. Christopher, Stacie's parents (David and Debora Gatlin), and other family members all financially supported Savannah. For the first year and a half of Savannah's life, Stacie and Savannah lived with the Gatlins, in Olive Branch, Mississippi.

¶3. After that, Savannah moved in with Christopher's maternal grandparents (Savannah's great grandparents), Linda Eaves and her husband, in Piperton, Mississippi. This residence was about sixteen miles from the Gatlins' home. During the work week, Christopher lived in Olive Branch, about five miles from the Gatlins' home. But on weekends, Christopher stayed in Piperton with Savannah and his grandparents. The Gatlins still had regular visits with Savannah and supported her financially during this time.

¶4. On June 19, 2012, an order was entered granting Christopher and Stacie joint physical and joint legal custody of Savannah. Christopher later gained sole physical and legal custody of Savannah.[2]

---

[2] It is not clear from the record why Christopher sought and obtained sole custody. But the record shows Stacie was incarcerated from October 29, 2013, to February 2, 2014. At the time of the hearing, Stacie was twenty-two years old, had criminal charges pending, and was living with her sister in Horn Lake, Mississippi.

¶5. Around April 2013, the Gatlins were denied any more visitation with Savannah. So on August 26, 2013, the Gatlins filed a petition for grandparents' visitation rights. After a trial on the Gatlins' petition, the chancellor awarded visitation. Christopher has appealed the award.

## Discussion

### I. Grandparent Visitation

#### a. Purely Statutory Right

¶6. There is no common-law right to grandparent visitation. *T.T.W. v. C.C.*, 839 So. 2d 501, 504 (¶7) (Miss. 2003). The right is purely statutory. *Aydelott v. Quartaro*, 124 So. 3d 97, 100 (¶9) (Miss. Ct. App. 2013). So it may only be considered if the statutory criteria are met. *Woodell v. Parker*, 860 So. 2d 781, 785-86 (¶15) (Miss. 2003). Mississippi Code Annotated section 93-16-3 (Rev. 2013) permits grandparents to petition for visitation in two circumstances. The first, which is not relevant here, allows visitation when a grandparent shows his or her own child has not been awarded custody of the grandchild, has had parental rights terminated, or has died. Miss. Code Ann. § 93-16-3(1). The second circumstance is when a grandparent shows (1) a "viable relationship" with his or her grandchild has been established, (2) visitation with the grandchild has been unreasonably denied by the grandchild's parent, and (3) visitation is in the grandchild's best interest. Miss. Code Ann. § 93-16-3(2); *see also Martin*, 693 So. 2d at 916 (emphasizing "the best interest of the child must be the polestar consideration").

3

¶7. For the Gatlins to have the statutory right to petition for visitation, they first had to show they "had established a viable relationship" with their granddaughter. Miss. Code Ann. § 93-16-3(2)(a). A "viable relationship" is a relationship in which a grandparent has: (1) "voluntarily and in good faith supported the child financially in whole or in part for a period of not less than six (6) months before filing any petition for visitation rights with the child," (2) "had frequent visitation including occasional overnight visitation with said child for a period of not less than one (1) year," or (3) "cared for [the grandchild] over a significant period of time during the time the parent has been in jail or on military duty that necessitates the absence of the parent from the home." Miss. Code Ann. § 93-16-3(3). They next had to show "the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child[.]" Miss. Code Ann. § 93-16-3(2)(a).

¶8. Only by the Gatlins' establishment of a viable relationship and unreasonable denial of visitation could they reach the "polestar consideration" for statutory grandparent visitation—whether "visitation rights of the grandparent with the child would be in the best interests of the child." Miss. Code Ann. § 93-16-3(2)(b); *see also T.T.W.*, 839 So. 2d at 504 (¶10) ("The best interests of the child must be the polestar consideration in awarding grandparent visitation."); *Hillman v. Vance*, 910 So. 2d 43, 47 (¶11) (Miss. Ct. App. 2005) (holding that, because a chancellor found denial of visitation was reasonable, he could have disposed of the issue without conducting a best-interest analysis under *Martin*).

b. *The Gatlins' Claim*

4

¶9. All parties agree Savannah lived with the Gatlins for the first year and a half of her life. Deborah testified that Savannah slept with her every night even though Savannah had her own room. And Deborah and her husband helped support Savannah financially. After the first year and a half, Deborah recalled Savannah visiting them around eight times per month, with overnight visits. The Gatlins also continued to help support Savannah financially. Deborah frequently took Savannah shopping, out to eat, and to the park to play. The Gatlins also hosted birthday parties and Christmases at their house for the first three years of Savannah's life. As Deborah put it, they were "really close." But that relationship ended abruptly in April 2013, when Christopher refused the Gatlins any more visitation.

¶10. The chancellor held a trial on the visitation petition. And after hearing testimony, she specifically found the Gatlins had a viable relationship with Savannah. She pointed out that Savannah had lived in their home, and they had provided her some financial support. Savannah also visited the Gatlins regularly, at times staying overnight. And there was a "close, loving relationship" between the child and her grandparents.

¶11. The chancellor had these words for why she held Christopher had unreasonably denied the Gatlins visitation:

> I have not heard one bit of evidence that would justify to this [c]ourt your denial of visitation of these grandparents with this child. . . . I have heard some excuses about why things have happened. I've heard some rationale on your part, [Christopher], and on the part of your family about why these grandparents should not have visitation. But I have heard absolutely no reason that this [c]ourt finds to be adequate or reasonable why these grandparents should not have visitation with this child.

5

¶12.    The chancellor found the first two statutory factors—a viable relationship and an unreasonable denial of visitation—were met.  So she addressed the *Martin* factors to decide if visitation was in Savannah's best interests.

### c.    The Martin *Factors*

¶13.    Christopher argues the chancellor failed to sufficiently address all of the *Martin* factors.  We disagree.

¶14.    In *Martin*, 693 So. 2d at 916, the supreme court set forth ten factors[3] chancellors must consider when determining a child's best interest when grandparent visitation is sought.

---

[3]  The *Martin* factors are:

1.    The amount of disruption that extensive visitation will have on the child's life.  This includes disruption of school activities, summer activities, as well as any disruption that might take place between the natural parent and the child as a result of the child being away from home for extensive lengths of time.
2.    The suitability of the grandparents' home with respect to the amount of supervision received by the child.
3.    The age of the child.
4.    The age, physical and mental health of the grandparents.
5.    The emotional ties between the grandparents and the grandchild.
6.    The moral fitness of the grandparents.
7.    The distance of the grandparents' home from the child's home.
8.    Any undermining of the parent's general discipline of the child.
9.    Employment of the grandparents and the responsibilities associated with that employment.
10.    The willingness of the grandparents to accept that the rearing of the child is the responsibility of the parent, and that the parent's manner of child rearing is not be to be interfered with by the grandparents.

*Martin*, 693 So. 2d at 916.

6

Here, it is clear the chancellor not only considered these factors but made findings on each one. She expressly found awarding visitation would not disrupt Savannah's life and that the Gatlins' home was suitable for visitation. The chancellor also found Savannah's age—four years old at the time of the hearing—would not adversely impact a visitation award. There were strong emotional ties between the Gatlins and Savannah. And the Gatlins were in good physical and mental condition and morally fit to exercise visitation with Savannah. The Gatlins lived near Christopher's home and agreed not to undermine his parenting or discipline of his daughter. And there was no evidence the Gatlins' employment responsibilities would interfere with visitation.

¶15. Thus, from a simple reading of the order, it is obvious the chancellor considered and applied each *Martin* factor. The trial transcript also shows the chancellor verbally addressed each factor. Still, Christopher points to two events at the Gatlins' home as evidence of an unsafe environment that he suggests should disqualify the Gatlins from visitation. On one occasion, the Gatlins' dog bit Savannah. Another time, David pushed Stacie's head into a sink, while Christopher and Savannah were there. The dog bite occurred when the Gatlins were not home and Stacie let their dog out of the cage. But the Gatlins maintained they kept their dog penned whenever Savannah is around. And though the sink incident troubled Christopher, he admitted there had not been any other altercations between Stacie and David.

¶16. The chancellor was certainly aware of these incidents but was not overly concerned about them. And after addressing the statutory prerequisites and the *Martin* factors, she

found grandparent visitation was appropriate. Based on our standard of review, we cannot say the chancellor abused her discretion or was manifestly wrong in awarding visitation. Nor did she clearly err in applying section 93-16-3(2) or the *Martin* factors.

## II. Amount of Visitation

¶17. Christopher next takes issue with the amount of visitation awarded the Gatlins. Typically, "visitation should be less than that which would be awarded to a non-custodial parent." *Martin*, 693 So. 2d at 916. But a greater amount of visitation may be awarded if "the circumstances overwhelming dictate" that more visitation is in the child's best interests, and it would harm the child not to grant it. *Id.* Ultimately, the amount of visitation is within the chancellor's discretion. *Id*. at 915.

¶18. The chancellor awarded the Gatlins one weekend per month and two full weeks in the summer. The Gatlins also got three hours with Savannah on her birthday, Easter, and July 4th, and two days following Thanksgiving day, two days following Christmas day, and two days during Spring Break. This is roughly forty-seven days a year. Under the cirucmstances, we do not find the amount of visitation awarded was excessive. *See Woodell*, 860 So. 2d at 790 (¶¶31-32) (holding roughly forty-five to forty-seven days per year in grandparents' visitation was not excessive); *cf. Martin*, 693 So. 2d at 915-16 (eighty-six days a year in even years and eighty-one days in odd years was excessive for grandparents' visitation).

¶19. We thus affirm.

¶20. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO THE**

8

**APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY CARLTON, J. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**JAMES, J., CONCURRING IN PART:**

¶21. I agree with the majority opinion that the statutory requirements for grandparents' visitation were met and that it is in the best interest of the minor child that grandparent visitation be awarded. However, it also appears from the record that the court should take certain precautions to ensure that the child's safety is protected. It appears from the record before us that visitation was properly suspended. Visitation should should not be denied but, rather, it should remain suspended until a proper plan is implemented.

¶22. Even though Mississippi Code Annotated section 93-5-24(9)(d)(i) (Rev. 2013) addresses restrictions on visitation by parents with a history of perpetuating family violence, I see no reason why the same logic should not be used for grandparent visitation. Specifically, section 93-5-24(9)(d)(i) states: "A court may award visitation by a parent who committed domestic or family violence only if the court finds that adequate provision for the safety of the child and the parent who is a victim of domestic or family violence can be made." Section 93-5-24(9)(d)(ii) further provides:

> In a visitation order, a court may take any of the following actions:
>
> 1. Order an exchange of the child to occur in a protected setting;
>
> 2. Order visitation supervised in a manner to be determined by

the court;

3. Order the perpetrator of domestic or family violence to attend and complete to the satisfaction of the court a program of intervention for perpetrators or other designated counseling as a condition of visitation;

4. Order the perpetrator of domestic or family violence to abstain from possession or consumption of alcohol or controlled substances during the visitation and for twenty-four (24) hours preceding the visitation;

5. Order the perpetrator of domestic or family violence to pay a fee to defray the cost of supervised visitation;

6. Prohibit overnight visitation;

7. Require a bond from the perpetrator of domestic or family violence for the return and safety of the child; or

8. Impose any other condition that is deemed necessary to provide for the safety of the child, the victim of family or domestic violence, or other family or household member.

¶23.    The presence of domestic violence and other situations present in the grandparents' home led to Christopher's refusal of the grandparents' visitation with the minor child.  I would find that a plan for visitation should be implemented by the trial court which would obviate the concerns of domestic violence and the safety of the child.

¶24.    For these reasons, I would affirm the award of grandparent visitation, but would allow visitation to be suspended, and remand the issues of domestic violence and the child's safety to be fully addressed by the trial court, after which visitation could be reinstated.  The amount of visitation may also be revisited based on the findings of the court as to the allegations of

domestic violence and safety concerns.

**CARLTON, J., JOINS THIS OPINION IN PART.**

**CARLTON, J., DISSENTING:**

¶25. I respectfully dissent from the majority's opinion in this grandparent-visitation case. I submit that the chancellor abused her discretion when she found that Christopher, Savannah's father, presented no evidence to support the denial of grandparent visitation. Moreover, the record fails to reflect that the grandparent visitation granted in this case serves the child's best interest.

¶26. The record reflects that Christopher presented evidence, corroborated by Stacie, of an unsafe environment at the Gatlins' home. Christopher presented evidence and testimony as to the facts that led him to conclude the Gatlins' home was unsafe for his young daughter. These facts included the chaotic environment, the violence that occurred among family members, the lack of supervision provided, the Gatlins' smoking, and the injury Savannah sustained from a dog bite.

¶27. The record reflects that Stacie, Savannah's mother, corroborated Christopher's testimony regarding the unsafe and chaotic environment at her parents' home. Stacie testified about how David, her father and Savannah's maternal grandfather, physically abused her. In addition, Stacie provided corroborating testimony as to the circumstances surrounding a dog bite that Savannah received at the Gatlins' home. Stacie testified that she had to let Gunner, the Gatlins' full-grown Doberman Pinscher, out of his pen to feed him,

and the dog bit Savannah. As a result of the bite, Savannah had to go to the hospital to receive emergency medical treatment.

¶28. In addition to the testimony given by Stacie and Christopher, David and Debora both testified that they smoke inside their home but refrain from smoking inside when their grandchildren are present. Even so, the record shows that David and Debora nonetheless smoke in front of Savannah. *See Denmark v. Denmark*, 118 So. 3d 679, 683 (¶¶23-24) (Miss. Ct. App. 2013) (discussing the adverse impact of smoking on a child's environment); *Love v. Love*, 74 So. 3d 928, 934 (¶25) (Miss. Ct. App. 2011) (discussing the evidence and testimony that a mother's smoking contributed to her child's multiple ear infections).

¶29. As to other factors affecting the home environment provided by the Gatlins, the record reflects that Debora also testified that her son and grandson are convicted felons. In addition, Debora and Stacie both testified about Stacie's then-pending felony charges for aggravated robbery. Furthermore, Christopher testified about the disruptive impact that the Gatlins' chaotic home environment had on Savannah's emotional state and her behavior.

¶30. In light of this testimony, I respectfully submit that the chancellor abused her discretion by finding that Christopher provided no evidence to support the denial of grandparent visitation. Moreover, I find the chancellor's judgment fails to pass constitutional muster since the decision failed to make Savannah's best interest the polestar consideration and failed to give deference to Christopher's paramount right, as Savannah's custodial parent, to control his child's environment. *See Aydelott v. Quartaro*, 124 So. 3d 97, 104

12

(¶23) (Miss. Ct. App. 2013) ("Parents with custody have a paramount right to control the environment, physical, social, and emotional, to which their children are exposed." (citation omitted)); *T.T.W. v. C.C.*, 839 So. 2d 501, 504 (¶10) (Miss. 2003) ("The best interests of the child must be the polestar consideration in awarding grandparent visitation.").

¶31.    Grandparents possess no common-law right of visitation, and grandparent-visitation statutes must be strictly construed. *See Smith v. Wilson*, 90 So. 3d 51, 58-59 (¶¶22-24) (Miss. 2012); *Vinson v. Vidal*, 28 So. 3d 614, 615 (¶5) (Miss. Ct. App. 2009). Mississippi's grandparent-visitation statute is narrowly tailored. *See Smith*, 90 So. 3d at 58-59 (¶¶22-24). Mississippi Code Annotated section 93-16-3(2) (Rev. 2013), the grandparent-visitation statute at issue, requires more than a viable relationship between a grandparent and grandchild. The statute also requires that grandparent visitation be in the child's best interest. Miss. Code Ann. § 93-16-3(2).[4]    Furthermore, our jurisprudence requires consideration of the *Martin*[5] factors to prohibit the grant of grandparent visitation that would interfere with a parent's substantive due-process rights. *See Smith*, 90 So. 3d at 59 (¶24).

¶32.    The record in this case fails to reflect that visitation with the Gatlins was in Savannah's best interest. The record reflects that the chancellor failed to acknowledge the evidence presented by Christopher, Savannah's custodial parent, showing that the Gatlins'

---

[4] *See also T.T.W.*, 839 So. 2d at 504 (¶10) ("The best interests of the child must be the polestar consideration in awarding grandparent visitation."); *Morgan v. West*, 812 So. 2d 987, 991 (¶10) (Miss. 2002) (recognizing that the child's best interest constitutes the polestar consideration when determining whether to grant grandparent visitation).

[5] *Martin v. Coop*, 693 So. 2d 912, 916 (Miss. 1997).

13

home provided an unsafe, chaotic, and disruptive environment for Savannah. As a result, the chancellor erroneously applied the *Martin* factors. Therefore, I would reverse and render the chancellor's judgment. Accordingly, I respectfully dissent from the majority's opinion.